122 So.2d 639 (1960)
Edgar HIDALGO, Plaintiff-Appellee,
v.
Roy DUPUY, Defendant-Appellant.
No. 5050.
Court of Appeal of Louisiana, First Circuit.
June 15, 1960.
Rehearing Denied July 12, 1960.
*641 Christovich & Kearney, New Orleans, for appellant.
Dubuisson & Dubuisson, Opelousas, for appellee.
Before TATE, MILLER, and PUTNAM, JJ.
TATE, Judge.
On November 3, 1950 the plaintiff Hidalgo was a passenger in an automobile which was involved in a collision with an opposite-bound truck owned and driven by the defendant Dupuy. Hidalgo seeks herein to recover the damages resulting from his personal injuries sustained in this accident. The plaintiff was awarded judgment in the amount of $45,691.50, as prayed for, and the defendant appeals.
As the trial court found, the preponderating evidence shows that, in attempting to pass a preceding westbound *642 truck, Dupuy pulled out into his left lane at a time when the eastbound vehicle in which the plaintiff was riding was so close that the plaintiff's driver, who immediately applied his brakes, was unable to avoid colliding with a portion of the defendant's westbound truck which was improperly protruding into the plaintiff's vehicle's lane of traffic. The defendant Dupuy's negligence was thus the sole proximate cause of the accident. Noland v. Liberty Mut. Ins. Co., 232 La. 569, 94 So.2d 671; Guidry v. Crowther, La.App., 1 Cir., 96 So.2d 71; Crowther v. Fenstermaker, La.App., 1 Cir., 96 So.2d 91; Brock v. Southern Farm Bureau Cas. Ins. Co., La.App., 1 Cir., 94 So.2d 492.
The chief question posed by the defendant's appeal is his contention that the present suit was not timely filed and that plaintiff's action for damages has therefore prescribed. In addition, the defendant contends that the damages awarded are excessive and, further, that the trial court erred in awarding a greater loss of earnings than was alleged in the original petition, since the defendant was never served with nor cited to answer an amended and supplementing petition filed by the plaintiff which described these additional lost earnings. The defendant further has filed in this court a motion to remand these proceedings in order to take further evidence concerning the alleged loss of earnings.

I. Prescription.
The defendant's plea of prescription is based upon the circumstance that the accident occurred on November 3, 1950, whereas the present suit was not filed until April 12, 1954. It is thus urged that this tort action has prescribed, having been filed more than one year after the date of the injury. LSA-Civil Code Arts. 3536, 3537.
The plaintiff, however, relies upon the institution of a suit in the federal courts on November 2, 1951, one day before prescription had accrued, as an interruption of prescription. The sole defendant in that suit, filed in the United States District Court for the Western District of Louisiana, was the Fidelity and Casualty Company of New York, the defendant's liability insurer at the time of the accident. The federal courts dismissed this suit on the ground that a "no action" clause of the policy (preventing a direct action against the insurer until a judgment had been obtained against the insured fixing the amount of the damages) was a valid defense to the suit, since the action had occurred in Alabama and since the Louisiana statute (LSA-R.S. 22:655) permitting such direct actions despite policy clauses to the contrary was by its terms expressly limited to actions upon accidents occurring in Louisiana. Hidalgo v. Fidelity & Cas. Co., 5 Cir., 1953, 205 F.2d 834, affirming D.C. W.D.La., 104 F.Supp. 230. Thus the present suit was brought within nine months of the date of the judgment finally dismissing the federal suit, so that the plaintiff's claim did not prescribe before the present suit was filed, if the filing of the federal suit interrupted prescription.
In our opinion, the trial court herein correctly overruled the defendant's plea of prescription.
The timely filing of the suit in federal court against the insurer prevented the accrual of prescription against that defendant. LSA-R.S. 9:5801 provides: "The filing of a suit in a court of competent jurisdiction *643 shall interrupt all prescriptions affecting the cause of action therein sued upon, against all defendants, including minors and interdicts." (Italics ours.)
(It is immaterial that service of citation upon the defendant insurer's agent was not made until November 8, 1951, five days after the prescriptive year, because actual service of citation, in addition to filing of the suit, is necessary to interrupt prescription only where the suit is filed in a court which does not have jurisdiction of the action. LSA-Civil Code Article 3518; Flowers v. Pugh, La.App., 1 Cir., 51 So.2d 136. Although there was a valid defense to the action filed in federal court, that court nevertheless had jurisdiction of the suit, see its opinion at Hidalgo v. Fidelity & Cas. Co., D.C., 104 F.Supp. 230; it was a court of competent jurisdiction within the meaning of LSA-R.S. 9:5801, having jurisdiction of the amount in dispute, of the defendant, and of the place where the action was brought, Code of Practice Articles 86, 87, see also Flowers v. Pugh, above-cited.)
Since the filing of the federal suit interrupted prescription against the defendant's insurer, it also interrupted prescription against the insured, the present defendant. "A suit brought against one of the debtors in solido interrupts prescription with regard to all," LSA-Civil Code Article 2097. See Sewell v. Newton, La.App. Orl., 152 So. 389.
Although the defendant contends that the insurer and its insured were not solidary obligors, so that suit against the one could not interrupt prescription against the other, we are constrained to disagree.
Under LSA-Civil Code Article 2091, "There is an obligation in solido on the part of the debtors, when they are all obliged to the same thing, so that each may be compelled for the whole, and when the payment which is made by one of them, exonerates the others toward the creditor." By the terms of its policy the defendant's insurer had agreed, subject to the limits and conditions of the policy, "To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury, sickness or disease, including death at any time resulting therefrom, sustained by any person, caused by accident and arising out of the ownership, maintenance or use of the automobile." (Policy coverage A.) By the terms of the insuring agreement, both the insurer and its insured are obligated for the same debt (namely the insured's tort liability covered by the policy), and payment made by either of them satisfied the liability of the other, so that within the statutory definition they are solidary obligors for the payment of the damages for which the insured is legally liable within the coverage of the insurance policy.
Under the terms of the "no action" clause[1], a condition precedent to a direct action by the injured person against the insurer is the obtaining of a judgment against the insured to determine the amount of the damages for which the insurer will be obligated; *644 but, after obtaining such judgment, the insured person is thereafter entitled to recover directly from the insurer under the policy to the extent of its coverage. Although the obligation of the insurer to pay to the injured person the same damages for which the insured is cast is conditioned upon the injured person first obtaining judgment against the insured, the obligation of the insurer and the insured to the injured person is nevertheless solidary. For, as LSA-C.C. Art. 2092 provides: "The obligation may be in solido, although one of the debtors be obliged differently from the other to the payment of one and the same thing; for instance, if the one be but conditionally bound, whilst the engagement of the other is pure and simple, or if the one is allowed a term which is not granted to the other."
While it is true that, as the defendant contends, a solidary obligation is not presumed and must be expressly stipulated, LSA-C.C. Art. 2093, it is likewise well settled that where two debtors are by contract each bound for the whole of the same debt, the legal effect of the intention of the parties as manifested by the language and the terms of the agreement is to create a solidary obligation, despite the failure of the parties to specifically characterize their obligation as "in solido". J. I. Case Threshing Machine Co. v. Bridger, 133 La. 754, 63 So. 319; Rusca & Cunningham v. Hammett, La.App. 2 Cir., 195 So. 642; E. George Rogers & Co. v. Black, La.App. 1 Cir., 155 So. 403; Dodd v. Lakeview Motors, Inc., La.App. 2 Cir., 149 So. 278; North British Mercantile Ins. Co. v. Patterson, 1 Cir., 5 La.App. 327. See also: Teutonia Nat. Bank v. Wagner, 33 La.Ann. 732; Jacobs v. Williams, 12 Rob. 183; Mayor, etc. New Orleans v. Ripley, 5 La. 120, 25 Am.Dec. 175; 2 Planiol, Treatise on the Civil Law (LSLI Translation, 1959), Sections 736, 741. "When several persons obligate themselves to the obligee by the terms in solido, or use any other expressions, which clearly show that they intend that each one shall be separately bound to perform the whole of the obligation, it is called an obligation in solido on the part of the obligors," LSA-C.C. Art. 2082.
The defendant-appellant contends that the reason that obligation of an insurer and its insured to pay damages is solidary is because the Direct Action Statute, LSA-R.S. 22:655, permits the injured person to sue the insurer directly as well as the insured, which reason is inapplicable under the present circumstances where the Direct Action Statute does not apply.
The cases relied upon by the appellant do not so hold. Offhand statements to such effect in Cox v. Shreveport Packing Co., 213 La. 53, 34 So.2d 373, and in Martin v. Mud Supply Co., La.App.Orl., 111 So.2d 375, were enunciated without discussion and by way of dicta in proceedings where the question was not at issue. For the most part, the cited cases state only that the cited statute permits a direct suit against the insurer despite the policy "no action" clause, which would in the absense of same have prohibited the direct suit. See, e.g., West v. Monroe Bakery, Inc., 217 La. 189, 46 So.2d 122; Bougon v. Volunteers of America, La.App.Orl., 151 So. 797. (Martin v. Mud Supply Co., La., 119 So.2d 484, so heavily relied upon by the appellant is not apposite: it simply held that a suit against an employer alone on a cause of action based upon its vicarious liability for the tort of an alleged employee, where it was held that the employer was not responsible for the alleged employee's tort, did not interrupt prescription against the liability insurer of the employee because no solidary liability existed between the employer and the employee's insurer.)
In our view, the Direct Action Statute does not convert into a solidary liability the obligation of the insurer to pay the damages for which the insured may be cast, for by virtue of the contract it is already such. The statute simply voids any policy clause which conditions the right of the injured person to enforce against the insurer its contractual obligation *645 to pay the insured's debt upon, as pre-requisite, the obtaining by the injured person of a judgment against the insured. That the insurer's obligation is so conditioned does not, as previously stated, prevent its being solidary. LSA-C.C. Art. 2092.

II. Quantum.
The trial court awarded the plaintiff damages in the amount of $45,691.54, the exact amount demanded by his original and also by a supplemental petition filed by him.
The original petition filed on April 12, 1954 contained the allegation: "That plaintiff estimates the damages which were caused him as a result of the said accident as follows, to-wit: Pain and suffering already endured, $5,000.00; Pain and suffering to be endured for life, $25,000.00; Past disability $2,500.00; Future disability, $10,000.00; Loss of earnings, $1,920.00; Medical expenses already incurred, $271.50; Future medical expenses, $1,000.00; Total, $45,691.50". By a supplemental petition of May 15, 1956, the plaintiff, without increasing the amount of his total demand, further alleged that on August 17, 1955, subsequent to filing of the original petition, he had lost his interest in a business co-owned by him, because due to the tort-caused disability he was unable to perform for the firm the work that he had been doing at the time of this accident, and he then alleged a consequent loss of earnings estimated at $5,000 per year.
The evidence shows that as a result of the severe impact of the accident, in which the automobile in which the plaintiff was riding was a total loss, the plaintiff was thrown to the ground and immediately and continuously thereafter suffered a severe pain in his lower back. He was not hospitalized for his injuries, since x-rays showed no bone injury, but he spent approximately two weeks after the accident in bed under the care of his family physician. Thereafter, he returned to work, but he was unable to perform his heavier duties due to the back pain, which increased with exertion or the attempt to perform heavier work.
Although in the course of the next few years the back pain decreased in intensity and the plaintiff did not suffer constantly from it, it is the testimony of the plaintiff, corroborated by the other medical and lay witnesses, that any attempt to perform heavier duties would bring on a disabling reoccurrence of the intensity of the pain, and that the apparent presence of the pain had resulted in a complete change in the plaintiff's demeanor and manner of walking. The testimony of the plaintiff's family physician and the lay witnesses is that, prior to the automobile accident of November 1950, the plaintiff had never had trouble with his back; but that always thereafter and at the time of the trial in 1956 he showed evidence of such disabling back condition in the way he walked and in his inability to perform heavier duties.
Without going into an award to the plaintiff for his pain and suffering, the trial court felt that the uncontradicted evidence as to loss of earnings reflected by the record justified an award in the total amount prayed for.
From 1946 until 1955, the plaintiff had been a working co-owner of an automotive supply and repair firm, serving as machinist for the firm. His average annual earnings from the firm for the five years preceding termination of his interest in the firm exceeded $9,600. The plaintiff and a former partner testified without contradiction that the plaintiff had not been able, due to his back disability following the accident in 1950, to perform his share of the work of the firm as its machinist, and that therefore the other co-owners had forced him to sell out his interest in this firm, which had continued to prosper thereafter also. After termination of his work for the firm in August of 1955, the plaintiff was able to obtain employment at a monthly salary of $300 performing the lighter duties of bill collector and automobile salesman.
*646 Thus, the plaintiff being fifty years of age at the trial in 1956, with a life expectancy of over twenty years, the trial court felt that the loss of earnings of at least $5,000 per year, even if limited to a working-life of 65 years and discounted to present cash value, indicated a recovery in excess of the amount prayed for.
What our learned trial brother overlooked, however, as apparently did both counsel, is that the plaintiff's loss of earnings due to the accident-caused disability cannot under the evidence be based upon the difference between his present earnings and his previous average annual receipts of $9,600 as a co-owner of the business. These sums paid to the plaintiff because of his 40% interest in the firm were not only to recompense him for his personal efforts but were also his share of the firm's profits based upon his ownership of 40% of the capital assets and good will value of the going business. When in 1955 the plaintiff's partners forced him to sell them his 40% interest in the business, he was fully paid by them for his ownership of the business, so far as the evidence shows. (The evidence is bare of actual price estimates of the value of the plaintiff's interest in the business and what he was actually paid for it or of any estimate of any cash loss suffered by the plaintiff in the price he received for his 40% interest in the firm.)
Thus the plaintiff cannot claim recovery as a tort-caused loss of any portion of his share ($9,600) of the firm's annual earnings which may be attributable to his ownership of the firm's assets and good will, for which the plaintiff was (so far as the record shows) fully compensated at the time he sold his interest in the firm to his co-owners. And there is no evidence by which we can fix a precise monetary basis for the share of the earnings attributable to the plaintiff's performance of his duties as the firm's machinist, which he is now disabled as a result of the tort from performing, or fix any special damages caused plaintiff by his disability to perform such duties. For the evidence reveals only that a machinist hired to replace the plaintiff was paid either $200 monthly (the plaintiff's testimony) or else $400 monthly (his former partner's testimony) whereas the plaintiff is under the evidence at the trial able to earn $300 per month performing the lighter duties of salesman and bill collector.
But because the plaintiff has not produced and in fact cannot produce any evidence of specific monetary loss of earning to prove the special damages alleged by his supplemental petition, does not mean that he is not entitled to any award under the claim of his original petition for general damages for past and future disability, which disability as previously noted is proved. The court must necessarily have discretion to assess damages in such instances according to the facts and circumstances of the case. See Civil Code Article 1934(3); McGee v. Yazoo & M. V. R. Co., 206 La. 121, 19 So.2d 21; Higginbotham v. Frazier, La.App. 1 Cir., 92 So.2d 89; Harrison v. Petroleum Surveys, La.App. 1 Cir., 80 So.2d 153. "When it is clear that a plaintiff has sustained some damages as a result of the fault of the defendant, according to our well settled jurisprudence, his demands will not be rejected merely because he cannot establish exactly the amount suffered," Brantley v. Tremont & Gulf Ry. Co., 226 La. 176, 75 So.2d 236, 239.
We think the evidence justifies a substantial award for the plaintiff's pain and suffering at the time of the accident and up until the trial, and for the pain and suffering he will endure intermittently for the remainder of his natural life as a result of the injuries received in the present accident. We think further that the plaintiff is entitled to an award for his past and future disability, measured not so much by any specific loss of earnings, but in terms of his inability to perform (that is, without pain and without a probable re-aggravation of his back injury into severity of pain and disability) any heavier tasks around the home, or by way of recreation, or in any employment he may assume. Although, *647 fortunately, due to the plaintiff's business experience and skill, many fields of employment are still open to him (if he can consistently secure employment in them), nevertheless we think a consideration in the award should be the limitation in the plaintiff's earning capacity due to his tort-caused disability to perform the skilled duties of machinist for which he is trained or even to undertake successfully (without pain and the appreciable risk of immediate re-injury) the duties of unskilled employments involving work requiring the exposure to other than light duties. Under all the circumstances of the case, we think that an award of $20,000 will be fair and adequate, and the trial court judgment will be reduced accordingly.
No special damages are proved. (The plaintiff's personal physician readily admitted that, due to their friendship, he had not charged the plaintiff for his services or the medical treatment afforded him.) Interest thereupon will be awarded from the date of judicial demand in the present suit, not from the date of demand by the earlier federal suit. Merchant v. Montgomery Ward & Co., La.App. 1 Cir., 83 So.2d 920.
It should at this point be remarked before concluding, however, that what gave us some concern in affirming a finding of permanent disability resulting from an injury of this type is the paucity of the medical testimony and the circumstance that, according to the record, the last time the plaintiff was examined for his back condition was in 1951, almost five years before the trial in 1956.
The plaintiff's family physician examined him for his back following the accident and, according to his scant records, most recently in 1951. His diagnosis of the condition was a chronic lumbo-sacral strain, caused by the accident and persisting thereafter due to a congenital back defect. The condition was still objectively manifest by muscle spasm at the time of the physician's last back examination in 1951, and the physician felt the disabling condition to be permanent because of this persistence. Also, in his social and other contacts with the patient thereafter up to the trial, he felt that because of the way the patient continued to hold himself in walking and because of his continued complaints of pain that there had been no substantial improvement in this back condition.
The defendant also produced only one medical witness, an orthopedic specialist who had examined the claimant just two times, in July and in September of 1951 respectively. On the occasion of both examinations, he found that the back strain caused by the accident was still present, as manifested by back spasm. He further found that the persistence of this strain probably resulted from a congenital defect in the fifth lumbar vertebra. This specialist acknowledged that the condition was disabling and confirmed the other physician's testimony that the back injury's reactivation into intensity of pain by a lifting incident in August 1951 (when the plaintiff attempted to lift a 15-lb. weight) related back to the severe back strain caused by the 1950 accident and was a result of the back condition therefrom resulting, rather than being a primary or superseding cause of future disability. This specialist further testified that in the normal course of the events, the strain and pain should gradually subside, but that, if it did not, back surgery was indicated.
In summary, although neither of the two doctors testifying had examined the plaintiff's back since 1951, one of them definitely felt that the disabling condition resulting from the accident was permanent (which conclusion was confirmed by his subsequent and continued non-medical observation of the plaintiff in the five years between 1951 and the trial in 1956), and the other inferentially admitted that the condition might be permanent by his recommendation of an operation if the pain persisted. The persistence of the complaints, as predicted by the family physician, was proved to the trial court's satisfaction by the testimony *648 of the plaintiff, other lay witnesses, and the family physician's non-professional subsequent observation of the plaintiff.
Because no medical examination had been made of the plaintiff's back for almost five years before the trial, this court gave serious consideration to remanding these proceedings to take further evidence concerning residual disability.
Ultimately, however, we have concluded that the plaintiff has proved his case of residual disability. The plaintiff's medical evidence proved that as a result of the accident he was permanently disabled by a chronic back strain. "Proof of the existence * * * of a fact of a continuous nature gives rise to an inference or rebuttable presumption that the fact exists at a subsequent time," 31 C.J.S. Evidence § 124a, p. 736. "The presumption of continuance of facts has been applied to matters pertaining to the person, such as mental or physical condition * * *", 31 C.J.S. Evidence § 124(b) (1), p. 738.
Despite this proof and the failure of his own medical witness to negative this permanently disabling condition (the existence of which is moreover corroborated by the uncontradicted lay testimony), the defendant did not see fit to introduce any other medical evidence or to seek further medical examination of the plaintiff, although at the close of the evidence the trial court specifically reserved to the defendant the right to obtain and to present further evidence relating to the plaintiff's disability and claimed loss of earnings, since the supplemental petition filed on the day of the trial had made additional allegations with regard thereto. The defendant thus asks this court to make the assumption that the disabling condition of the plaintiff's back did not persist, instead of having sought further medical examination which might have disputed (but which might have corroborated) this continuing back disability proved by the trial testimony. We do not think it is within the province of this court to substitute its guess that the plaintiff might have gotten better for the uncontradicted evidence that he did not.
Since we have disallowed any award for the loss of earnings alleged by plaintiff in his supplemental petition, it is unnecessary for us to discuss the contention of the able counsel for the defendant that this amending petition improperly enlarged the pleadings because the defendant was improperly served and cited with regard thereto. (All the evidence in this record as to such claim was admissible under the allegations of disability and pain contained in the original petition.)
Likewise, we do not feel called upon to discuss at length the motion to remand filed by the defendant at the time of the oral argument of this appeal. The motion deals principally with the omission from the evidence of certain testimony concerning a leg injury sustained by the plaintiff in January of 1956, plaintiff's claims arising from which were settled in December of 1957. The defendant alleged that the motion to remand was filed for consideration only in the event this court sustained (as it did not) the filing of the supplemental petition alleging lost earnings (Articles 3, 4, motion to remand).
Further, the affidavits attached to the motion to remand concern events, the last of which occurred approximately twenty-two months before the trial court judgment; there is no explanation why the matters were not brought to the attention of the trial court prior to the judgment, nor is there any allegation that the information was not in the possession of the defendant in time to have done so, nor that the information could not reasonably have been discovered in time to have done so. Also, the evidence of additional disability by reason of the subsequent leg injury does not, in our ultimate view, affect the plaintiff's recovery for his back injury resulting from the present accident.
In our view, the only effect of a remand to the trial court to consider these matters, not brought to the attention of the *649 courts until the oral argument of the appeal although available for almost two years prior to the trial court judgment, would be to delay even further the final disposition of this litigation, which commenced almost ten years ago. For this reason, and because we are satisfied that the judgment herein does substantial justice between the parties on the basis of the evidence introduced in the record (which the defendant had a fair opportunity to rebut), the motion to remand is refused.
For the foregoing reasons, the judgment in favor of the plaintiff is reduced to an award of Twenty Thousand Dollars, together with legal interest thereupon from date of judicial demand until paid, and for all costs of these proceedings. As thus amended, the judgment is affirmed.
Amended and affirmed.
NOTES
[1] The exact wording of the "no action" clause in the present policy is contained in clause 6 of the policy "Conditions" and provides as follows: "* * * 6. Action Against CompanyCoverages A and B. No action shall lie against the company unless, as a condition precedent thereto, the insured shall have fully complied with all the terms of this policy, nor until the amount of the insured's obligation to pay shall have been finally determined either by judgment against the insured after actual trial or by written agreement of the insured, the claimant and the company.

"Any person or organization or the legal representative thereof who has secured such judgment or written agreement shall thereafter be entitled to recover under this policy to the extent of the insurance afforded by this policy. Nothing contained in this policy shall give any person or organization any right to join the company as a co-defendant in any action against the insured to determine the insured's liability.
"Bankruptcy or insolvency of the insured or of the insured's estate shall not relieve the company of any of its obligations hereunder."