195 So.2d 390 (1967)
Jimmie WILKS et ux., Plaintiffs-Appellees,
v.
ALLSTATE INSURANCE COMPANY et al., Defendants-Appellants.
No. 1889.
Court of Appeal of Louisiana, Third Circuit.
February 15, 1967.
*392 Hall, Raggio & Farrar, by Louis D. Bufkin, Lake Charles, for defendants-appellants.
Francis E. Mire, Lake Charles, for plaintiffs-appellees.
Before TATE, SAVOY, and CULPEPPER, JJ.
TATE, Judge.
This is a tort suit. On a previous appeal we overruled the defendant insurer's contentions of no coverage and remanded for trial. La.App., 177 So.2d 790.
On the remand, the plaintiffs recovered judgment on the merits against the two defendants, a garageman (Jacobs) and an insurer (Allstate). The defendants now appeal this adverse judgment. We have previously overruled the plaintiff-appellee's motion to dismiss this present appeal. La. App., 191 So.2d 663.
There is no serious dispute with regard to the negligence or to the amount of the award. The chief issue of this appeal is raised by the contention of Allstate, the defendant insurer, that the award against it should be reduced by one-half because of its policy provision allegedly limiting its liability if there is other valid and collectible insurance. *393 (The alleged other insurer was not brought into this action, either by the plaintiff as a defendant to the principal demand or by the defendants by a third-party demand.)
Facts.
The plaintiff wife was driving the family car when it was struck by a vehicle which negligently ran a stop sign. An employee of the garageman Jacobs was driving the other vehicle. It belonged to a customer (Calhoun) to whom Allstate had issued a liability policy. Allstate was held liable as the omnibus insurer of the garageman Jacobs or his employee, who were using the car with the consent of Calhoun, Allstate's named insured. See 177 So.2d 790 (opinion on first appeal).
Allstate contends, however, that its liability is limited to one-half of the amount for which cast. Allstate relies upon an "other insurance" clause of its policy, which provides for the apportionment of its liability when there is other insurance covering the same loss.[1] Allstate contends that immediately before the accident the garageman Jacobs himself had applied for and been granted an oral binder for a garage liability policy, whichbeing valid and collectible insurancehad the effect of reducing Allstate's liability proportionately under its "pro rata" clause.
We may say that the showing in support of this contention indicates its probable weakness. According to this showing:
A local agent had issued garage liability policies to Jacobs which covered periods in 1961-62 and 1962-63, the last of which had expired nineteen days before the accident of December 3, 1963.[2] On December 3rd, the day of the accident, Jacobs appeared at his local agent's office, paid up arrearages on his expired policy, and requested further coverage.
The agent testified, and the agent's correspondence indicates, that Jacobs did apply for insurance, but a couple of hours after the accident. An affidavit from Jacobs states that he telephoned the agent in the morning of the day and received assurance of coverage then,[3] although he did not *394 pay the arrearages until later in the day, presumably after the accident in the afternoon. The agent actually forwarded an application for coverage to a new company which had never previously insured Jacobs, merely recommending that the insurer issue and forward a policy, which further complicates the coverage question.[4]
Procedural Context.
The question of other insurance might easily have been resolved if presented on the merits. However, the manner in which the issue was tried has greatly increased the difficulties in determining this issue.
The plaintiffs chose a motion for summary judgment as the procedural vehicle for determining the question of Allstate's right to have its liability limited because of its pro rata "other insurance" clause. (The defendant first raised the issue by amended and supplemental answer immediately prior to trial. By pre-trial conference it was agreed this issue would be disposed of separately after trial.) The trial court sustained the plaintiffs' motion for summary judgment as to Allstate's defense that the recovery against it would be reduced for this reason.
As the mover for summary judgment, the plaintiffs have the burden of negativing any issue of fact as to the existence of other insurance or of a pro rata clause of the other policy which might make both insurers proportionately liable instead of such other policy providing only excess coverage (see footnote 1 above). Smith v. Preferred Risk Mutual Insurance Co., La.App. 3 Cir., 185 So.2d 857. It is thus not enough for the plaintiffs to suggest that the great preponderance of the evidence may negative these facts. The proponent of a summary judgment must show there is no material factual issue, and all doubts are resolved against a summary judgment and in favor of a trial on the merits to resolve any material facts shown to be disputed. Vallier v. Aetna Finance Co., La.App. 3 Cir., 152 So.2d 112.
Applying this heavy burden, we think that the showing does not exclude issues of fact (1) that Jacobs may have secured an oral binder from the local agent or Employers insuring him before the accident and (2) that the policy which Employers may have issued him might have contained a "pro rata" other insurance clause instead of an "excess only" clause.
"Pro rata" liability of both insurers: Treatise and decisional references.
For purposes of summary judgment, we will therefore assume that at the time of the accident the tortfeasor's automobile was insured by one policy issued by Allstate to the vehicle's owner (Calhoun) and also by another policy issued to the garageman (Jacobs). We further assume that each policy had a bodily injury limit of $5,000 per person and that each contained a pro rata "other insurance" clause. We further assume that both of these policies were applicable as "primary" insurance. Since the recovery from Mrs. Wilks's personal injuries was approximately $5,000, or within the limits of both policies, each insurer would be liable proportionate to its limits, i. e., for one-half of this amount (see pro rata clause set forth in footnote 1) if both insurers were joined as parties to this action. See State Farm Mutual Auto. Ins. Co. v. Travelers Ins. Co., La.App. 3 Cir., 184 So.2d 750.
The defendant Allstate's position is, essentially, that, where recovery is within policy limits and two policies with pro rata clauses are each applicable, then each insurer can never be liable for more than its proportionate share of the recovery, even though the other insurer is not a party to the suit. In the present case, then, assuming the facts to be as stated previously, it is contended that the injured plaintiff can recover only $2,500 against Jacobs's insurer Allstate although the judgment against Jacobs *395 himself is $5,000 for Mrs. Wilks's injuries, even though Allstate had issued and received premiums for policy protection up to $5,000 per person injured.
In making this contention, Allstate's counsel particularly relies upon the statement in the Annotation, InsurersApportionment of Losses, 21 A.L.R.2d 611: "The authorities uniformly hold that such an insurance contract, in the absence of statute to the contrary, is valid, and creates a liability that is several and not joint. Consequently, such a contract will not justify a recovery by the insured against the insurance company for more than the pro rata amount stipulated therein."[5] See also to similar effect, 16 Couch on Insurance 2d, Section 62:7.
As we will shortly illustrate, this principle was for the most part applied in decisions where both insurers were parties, where at issue was primary-versus-pro rata liability of the insurers or the right of contribution of one insurer from another.
A different principle may be applicable when the litigation concerns the claim of the insured (or the injured person under the Louisiana Direct Action Statute, LSA-R.S. 22:655) to enforce against either one of the insurers that insurer's full policy limits. This differing principle is stated at 8 Appleman, Insurance Law and Practice, Section 4913, p. 387, as follows: "The liability of the co-insurers to the insured is several, and not joint, so that the policyholder may collect the full amount from either insurer, leaving the latter to its right of contribution from the other." [6]
In support of the Appleman statement are cited sixteen decisions, including the 1966 pocket parts. In support of the Couch statement to apparently opposing effect are cited twelve decisions, including two of those cited by the cited A.L.R. annotation (see footnote 5). Examination of the decisions cited in support of either view indicates that most of them are inapplicable or else authority merely by way of dicta or implication. Very few of the decisions touch the actual issue of this litigation, which concerns the insured's right to collect the full policy limit against the sole insurer which is a party and before the court.
For instance, many of the decisions arose from litigation in which both of the insurers were parties, where the court was simply fixing the liability between the insurers without there being any issue as to the solidary liability vel non of the insurers with regard to the insured himself.[7] (Similarly, *396 some of the cases relied upon by the appellant State Farm concern the fixing of proportionate liability between insurers, both of whom were before the court.[8])
Again, another group of the treatise cases concerns the right of one insurer who has paid the judgment to obtain contribution from another, with the earlier cases tending to disallow contribution for reasons found upon common law technicalities of pleading or definition,[9] and the later cases tending to permit it for a variety of reasons.[10] See also 46 C.J.S. Insurance, § 1207; 7 Am.Jur. 2d Automobile Insurance, Section 203. Yet other of the cited decisions concern whether the liability of the insurer is primary or pro rata.[11] Others concern the proportionate liability of fire insurance under particular valued-policy statutes.[12] Yet others involve issues so tangentical to the present as not to warrant classification or citation.
After eliminating the foregoing decisions, there does remain a residue of cited opinions, to divided effect, in which the present question was directly at issue. Two decisions hold that an insured may recover against his insurer for a liability within its policy limits, despite the application of other insurance and applicable pro rata clauses. Clow v. National Indemnity Co., 54 Wash.2d 198, 339 P.2d 82 (1959); Commercial Casualty Ins. Co. v. Knutsen Motor T. Co., 36 Ohio App. 241, 173 N.E. 241 (1930). Under similar circumstances, two decisions limited the insured's recovery to the proportionate liability of the defendant insurer. Vrabel v. Scholler, 369 Pa. 235, 85 A.2d 858 (1952); Traders & General Ins. Co. v. Hicks Rubber Co., 140 Tex. 586, 169 S.W.2d 142 (1943).[13]
*397 The two lines of decisions cannot be reconciled. The Clow decision, specifically citing the latter two cases, simply states that they are the minority view, citing five decisions allegedly contrary (but four of which actually concern distinguishable questions).
The source of much of the confusion in the field, both in the decisions cited immediately above and in the conflicting dicta in many of the decisions earlier cited, is the variable meaning attached to the common-law concept of a "several" obligation. (See footnote 6 above.) It may therefore be advisable to discuss briefly this common-law concept and the civil law concepts most nearly equivalent.
A "several" obligation in the common law.
Under the Louisiana Civil Code, "Several obligations are produced, when what is promised by one of the obligors, is not promised by the other, but each one promises separately for himself to do a distinct act * * *." Article 2078.
By this definition, the obligors bound severally cannot have agreed to perform the same act. On the other hand, "When several persons obligate themselves to the obligee by the terms in solido, or use any other expressions, which clearly show that they intend that each one shall be separately bound to perform the whole of the obligation, it is called an obligation in solido on the part of the obligors." Article 2082. (Italics ours.) The solidary obligation to pay the entire debt can result from different instruments, or although the obligors be obliged differently to pay the same debt, Article 2092; Hidalgo v. Dupuy, La. App. 1 Cir. 122 So.2d 639. Both of these types of obligations are to be distinguished from the "joint" obligation of our Civil Code where several persons join in the same contract to do the same thing, Articles 2080, 2081, where all joint obligors must be joined in any suit to enforce the obligation, Articles 2085, 2087, and where each joint obligor is held liable only for his proportion of the obligation. Article 2086.
See also Comment, Solidary Obligations, 25 Tul.L.Rev. 217 (1951).
The "joint and several" obligation of the common law is quite similar to the solidary obligation of the civil law in that either or both of the obligors may be sued for enforcement of the whole obligation. 4 Corbin on Contracts, Section 937 (1950); 17A C.J.S. Contracts § 355; 17 Am.Jur.2d Contracts, Section 299. However, the common-law concepts of "joint" and of "several" obligation differ distinctively from the Louisiana concepts denoted by the identical terms.
The several obligation of the common law could not only be the legally independent promises of two obligors to perform separate and distinct acts (as with the several obligor of the Louisiana civil law); it could also denote separate promises by two obligors for the same performance (as in the Louisiana solidary obligation). Corbin, Section 925; 17A C.J.S. Contracts § 352. The joint obligation of the common law referred primarily to the ancient necessity to join all joint obligors in the same suit to enforce the obligation (as with Louisiana joint obligors); but it also included the concept that all joint obligors could each be bound for the entire performance to the obligee (rather than only for his proportional part, as with the Louisiana joint obligor). 4 Corbin, Chapter 52 ("Joint and Several Obligations"), especially Section 925; 17A C.J.S. Contracts § 353.
Thus, with regard to the old common law distinctions the classification of an obligation as "several" or "joint" is not significant for the determination of the real question before us: Can either insurer be held for its full policy limits owed to the insured, even though another insurer has issued a policy covering the same liability? (That is, leaving the insurers to fight out between *398 themselves any right one may have to enforce contribution from the others.) Under the common law definitions the obligation could be either joint or several and still be enforceable in full against either obligor. For purposes of the instant case, the question of whether the insurers' obligations would be termed "joint" or "several" by the common law judges is irrelevant.
The ultimate test of whether the obligor could be held for the whole or for only a proportionate part of the obligation is essentially whether the two obligors each promised the same (i. e., the full) performance or else whether each had promised only a different performance (i. e., to pay only its proportionate part of the liability). Corbin, Section 925.[14] In this regard, decision of this essential question is determined by an interpretation of the intention of the parties in the light of the language used and of the surrounding circumstances. 4 Corbin, Section 926; 17A C.J.S. Contracts § 350; 17 Am.Jur.2d Contracts, Section 299.
The insuring agreement of a liability insurance contract.
Under the insuring agreement, the defendant Allstate agreed "to pay on behalf of the insured all sums which the insured shall be legally obligated to pay as damages * * * arising out of the ownership, maintenance, or use of the owned automobile * * *." This insuring agreement creates a solidary obligation with the insured, although the insured and the insurers are bound differently to perform the same obligation. LSA-C.C. art. 2082; Hidalgo v. Dupuy, La.App. 1 Cir., 122 So.2d 639, certiorari denied. Under the respective insuring clauses, each of the insurers are solidarily bound for the same debt, namely the tort liability of the insured, although of course the policy provisions limiting liability limit respectively the recovery against each insurer.
Allstate persuasively argues that the pro rata clause limits the solidary liability of the insurer to and for the insured, just as the policy limits do. Allstate in effect contends that, where there is other valid and collectible insurance, the pro rata clause, where applicable, has the effect of converting its liability to its insured into joint coseveral (i. e., only for the insured's proportionate share of the insured's liability) rather than joint and several (i. e., solidary with its insured's tort liability up to policy limits).
We must reject this forceful argument. We hold instead that by reason of the solidary liability of each of the two insurers with the insured, the policyholder may collect the full amount from either insurer, leaving the latter to its right of contribution from the other insurer, in accord with what Appleman, Section 4913, and Clow v. National Indemnity Co., 54 Wash.2d 198, 339 P.2d 82 (1959) state is the majority rule. We thus conclude that the liability of each insurer with the insured continues to be solidary, Hidalgo v. Dupuy, cited above, and is not transmuted by the pro rata clause into only partial coverage which may be less than the policy limits for which premiums were charged.
We so conclude by reason of our interpretation of the presumed intent of the parties to the insurance contract. In doing so, we take into consideration that otherwise the insured may be forced to pay a portion of the recovery against him even though (as here) such recovery is within the policy limits. We are also influenced to conclude this intent by other practical consequences *399 resulting from the opposing interpretations:
a. Proof of existence of other "valid and collectible" insurance:
Under the pro rata clause (see footnote 1), the company's liability is shared proportionately with the policy limits of another company which has also provided "valid and collectible insurance against such loss". If this other alleged insurer is not impleaded in the suit, any holding that this other insurance is "valid and collectible" is not binding upon the other company in different proceedings by the insured against such other company to enforce such other alleged coverage. Thus a defendant insurer's protection of its insured might be reduced to below policy limits in present litigation, but the insured nevertheless denied recovery against the other insured in subsequent litigation. To effectuate the policy intention we believe that ordinarily the other insurance cannot be regarded as "valid and collectible" so as to reduce an insurer's liability below policy limits, unless the validity and collectibility[15] of the other insurance is determined by proceedings to which the alleged other insurer is a party.[16]
b. Purpose of liability policy and relative resources of the insurer and the insured.
An automobile liability policy is issued to protect the insured against claims arising out of automobile use. Under the insuring agreement, the insurer agrees to pay on behalf of the insured damages within policy limits and to provide him with a legal defense against damage suits so arising. The insurer has readily available legal counsel and nationwide investigative resources, the benefits of both of which the insured contemplates receiving when covered by a valid policy.
If we adopt Allstate's present contention, then where other insurance is potentially available, even under farfetched circumstances such as the present (see Facts above), the insured would be required to retain counsel independent of his insurer's in order to implead the alleged other insurer or else to prove the invalidity or uncollectibility of such coverage. Within the contemplation of the parties and of the purpose of the insurance contract, this burden should instead be on the insurer, which can more readily and efficiently investigate the potential liability of the other insurer and, if so indicated, implead it as a party to the litigation.
(We will use the present litigation as an illustration of the possible harsh results if Allstate's construction of the policy provision were adopted:
(The record shows that the potential claim against Employers, the other insurer, is tenuous; recovery against it is far from assured, if indeed possible at all. The record further shows that the insured garageman (Jacobs) was so impecunious that his own counsel withdrew from the case because of nonpayment of legal fees.
(With its investigative resources, Allstate is better able than Jacobs to produce a showing of coverage by Employers, which showing might even preponderate in the present proceedings since Employers is not impleaded and will not directly oppose such showing with its own resources. Should Allstate by this ad hoc preponderance of evidence in these proceedings succeed in reducing its liability below its policy limits (i. e., to $2,500 of the $5,000 judgment rendered against it and Jacobs), then Jacobs would have *400 the burden of suing Employers for the allegedly insured difference; but, now directly opposed by Employers's own investigative resources, he might then be unable to produce evidence that still preponderates that Employers's coverage is valid. (That is, even assuming this impecunious insured could retain counsel and proceed to attempt to collect this problematical claim.) The $2,500 portion of the judgmentallegedly insured by Employerswould of course be executory against him during the pendency of any proceedings by him against Employers, whether or not he eventually prevailed.
(Further, to avoid such possible results, the insured might be required to retain counsel and assert claims against a potential "other insurer" which both the insured and the counsel he retains feel to be almost groundless.)
c. Procedural consequences of the opposing constructions.
Under our interpretation of the pro rata clause, the liability of both insurers with the insured and with each other is solidary. If so, any insurer sued can implead any other alleged insurer by third party demand. LSA-C.C. Art. 2103; LSA-C.C.P. Art. 1111. A defendant insurer is generally far better able to do so than is the insured (see illustration above).
On the other hand, if the obligation of each insurer is only for a proportionate part of the recovery against the insured, then the defendant insurer may not implead the other alleged insurer in order to have the validity of this other coverage finally determined in the present suit. A principal defendant may implead as third party defendant only a party "who is or may be liable to him for all or part of the principal demand." LSA-C.C.P. Art. 1111; Lanza Enterprises, Inc. v. Continental Insurance Co., La.App. 3 Cir., 129 So.2d 91 (syllabus 2), certiorari denied. Thus, the insured might not have the legal or investigative resources to institute a third party demand against some other insurer potentially liable (see illustration above), but nevertheless the defendant insured itself would be legally unable to implead such other insurer to have determined finally the validity of its coverage.
Placing the duty upon the insurer (rather than the insured) to investigate, to attempt to secure contribution from, and to implead any other alleged insurer is in accord with the insured's fiduciary responsibility to protect the interests of its own insured in matters of settlement and litigation. Cf., Younger v. Lumbermen's Mutual Cas. Co., La.App. 3 Cir., 174 So.2d 672. By a contrary construction of the pro rata clause, the insurerif unable to directly implead the alleged other insureris forced to raise such defense by instead using its superior investigative and legal resources against its own insured in order to exculpate itself from liability for a portion of the policy limits set forth by the policy.
The insuring agreement of the liability insurance contract: Conclusion.
In summary, we conclude that, with respect to the interests of the insured, the pro rata clause does not entitle an automobile liability insurer to reduce below policy limits its coverage of the liability of the insured. Within the intent of the parties, the pro rata clause is simply designed to regulate contribution as between insurers which may have provided coverage which happens to apply to the same loss.
As stated in a similar context, with citations from numerous jurisdictions in support: "* * * the rights of the insured must be fully protected and, hence, the pro rata clause must not be so applied as to diminish his protection under any circumstances. The reason generally advanced for this principle is that since usually the insurer fixes the amount of his premium regardless of other insurance, and if, after *401 the loss, he happens to find other insurance which relieves him in part from his liability, it is a piece of pure good fortune for him, his principal engagement having been to pay the loss in full up to the face of his policy and that the insured, having given no promise to take out or to keep up other insurance, should not suffer by a windfall of the insurer." Annotation, Apportionment or contribution as between specific and blanket insurance policies, 169 A.L.R. 387, 397-98.
Our interpretation of the insurance policy to this effect is in accord with the usual rules of policy construction.
As shown by the divided jurisprudence of other states, it is at least ambiguous whether the pro rata clause is intended to apportion liability only as between the insurers with coverage applicable, rather than being intended also to reduce a particular insurer's liability to its insured to a sum less than the policy limits. In cases of ambiguity, policy provisions are construed most favorably to the insured and against the insurer; of the permissible constructions, the courts will adopt that which effectuates coverage over that which defeats it. Schonberg v. New York Life Ins. Co., 235 La. 461, 104 So.2d 171, Wilks v. Allstate Insurance Co., La.App. 3 Cir., 177 So.2d 790. Furthermore, limitations of and exceptions to the coverage of a policy must be clearly expressed and in case of doubt are construed unfavorably to the insurer who, after all, drafted the policy. Kendrick v. C. N. Mason Co., 234 La. 271, 99 So.2d 108, Wilks v. Allstate, cited above.
Decree.
For the reasons stated, we affirm the judgment of the trial court holding the defendant Allstate liable for the full policy limits of the contract issued by it.
Affirmed.
NOTES
[1] The applicable clause of Allstate's policy reads: "Other Insurance. If the insured has other insurance against a loss covered by Part 1 of this policy [automobile liability insurance] the company shall not be liable under this policy for a greater proportion of such loss than the applicable limit of liability stated in the declarations bears to the total applicable limit of liability of all valid and collectible insurance against such loss; provided, however, the insurance with respect to a temporary substitute automobile or non-owned automobile shall be excess insurance over any other valid and collectible insurance."
[2] If these policies had been in effect, they plainly provide that they were excess insurance only, if there was other insurance. Allstate's own "other insurance" clause provides that only with respect to a "non-owned" automobile was the Allstate policy excess when other insurance is applicable; and here the vehicle insured by Allstate was an "owned" vehicle, i. e., owned by the named insured. There is thus no conflict between the clauses, and so therefore Allstate alone is liable as the primary insurer, with its "pro rata" clause not coming into play so as to reduce its own liability just because there is a secondary insurer. See Peterson v. Armstrong, La. App. 3 Cir., 176 So. 2d 453, 458 (footnote 2). The general rule in fact is that the owner's policy then provides the primary insurance, with the non-owned coverage provided by the other policy being excess insurance only available after the primary policy's limits are exhausted, despite any pro rata clause in the primary policy. Annotation, Liability Insurersapportionment "excess" versus "pro rata", 76 A.L.R.2d 502; 16 Couch on Insurance 2d, Section 71-72; 8 Appleman, Insurance Law and Practice, Section 4914: 7 Am.Jur.2d Automobile Insurance, Section 202.
[3] The suggestion is thus made on Jacobs's behalf that, although a new policy was not actually issued, there was an oral binder or estoppel to deny continued coverage. 1 Couch, Section 14:32 and 4 Couch, Sections 26:189-91; 12 Appleman, Section 7192 and 16 Appleman, Section 9202.
[4] See Couch, Section 26:198, regarding inception of coverage and preliminary contract of insurance.
[5] The uniform authorities referred to are only four decisions: Globe Indem. Co. v. Sulpho-Saline Bath Co., C.A.8 Neb., 299 F. 219 (1924); Ranallo v. Hinman Bros., D.C.Ohio, 49 F.Supp. 920 (1942); Consolidated Shippers v. Pacific Employers Ins. Co., 45 Cal.App.2d 288, 114 P. 2d 34 (1941); Grabenstatler v. Rock Asphalt & Constr. Co., 215 App.Div. 257, 213 N.Y.S. 216 (1926). As the text of this opinion indicates, these cited decisions concern the division of the liability where both insurers are joined as parties, see text at footnote 7 (Ranallo, Consolidated Shippers), or the right under equity or common law principles of one insurer to obtain contribution from another, see text at footnote 9 (Globe Indem. Co. case). The cited Grabenstatler decision is completely inapposite; it involved the statutory authority of a workmen's compensation board to apportion a judgment between two compensation insurers, both of which were parties to the litigation.
[6] It is to be noted that Appleman states the liability to the insured of each insurer is "several and not joint", so therefore the insured can collect the full amount from either. The ALR annotation, to the exact contrary, states that each insurer is bound only for its pro rata portion because the liability is "several and not joint"! 21 A.L.R.2d 611. The common law concept of a several obligation will be discussed under a separate heading below.
[7] Hospital Service Dist. No. 1 v. Delta Cas., Inc., La.App. 4 Cir., 171 So.2d 293 (1965); Case v. Fidelity & Cas. Co., 105 N.H. 422, 201 A.2d 897 (1964); Celina Mutual Cas. Co. v. Citizens Cas. Co., 194 Md. 236, 71 A.2d 20, 21 A.L.R. 20, 21 A.L.R.2d 605 (1950); Kenner v. Century Indem. Co., 320 Mass. 6, 67 N.E.2d 769, 165 A.L.R. 1463 (1946); Ranallo v. Hinman Bros. Const. Co. (D.C. Ohio) 49 F. Supp. 920 (1942), aff'd. Buckeye Union Cas. Co. v. Ranallo, 6 Cir., 135 F.2d 921; Employers Liability Assurance Corp. v. Pacific Employers Ins. Co., 102 Cal.App. 2d 188, 227 P.2d 53 (1951); Consolidated Shippers, Inc. v. Pacific Emp. Ins. Co., 45 Cal.App.2d 288, 114 P.2d 34 (1941); Lamb v. Belt Cas. Co., 3 Cal.App.2d 624, 40 P.2d 311 (1935); Employers Mutual Liability Ins. Co. of Wis. v. Indem. Ins. Co. of N. Am., 37 Misc.2d 421, 234 N.Y.S. 2d 839 (1962).
[8] Guin v. Commercial Cas. Ins. Co., 224 La. 44, 68 So.2d 752, 753 (and companion case of same title, 224 La. 59, 68 So.2d 757); Milan v. Providence Insurance Co., 227 F.Supp. 251 (D.C.La., 1964).
[9] Globe Indemnity Co. v. Sulpho-Saline Bath Co., C.A. 8, 299 F. 219 (1924); Commercial Standard Ins. Co. v. American Emp. Ins. Co., (D.C., Ky.) 108 F. Supp. 176 (1952).
[10] Clow v. National Indemnity Co., 54 Wash.2d 198, 339 P.2d 82 (1959), and summary of recent cases cited therein; Liberty Mutual Ins. Co. v. Standard Acc. Ins. Co. (D.C., N.Y.) 164 F.Supp. 261 (1958); Central Surety & Ins. Corp. v. New Amsterdam Cas. Co., Mo.App., 216 S.W.2d 527 (1948).
[11] Commercial Casualty Ins. Co. v. Hartford Acc. & Indem. Co., 190 Minn. 528, 252 N.W. 434, 253 N.W. 888 (1934); New Amsterdam Cas. Co. v. Hartford Acc. & Indem. Co., (D.C., Ky.) 18 F. Supp. 707 (1937).
[12] Walker v. Queen Ins. Co., 136 S.C. 144, 134 S.E. 263, 52 A.L.R. 259 (1926); National Fire Insurance Co. v. Dennison, 93 Ohio St. 404, 113 N.E. 260, L.R.A. 1916F, 992 (Ohio S.Ct., 1916).
[13] Three other decisions limited an insured's recovery against his insurer to the insurer's proportionate liability under the pro rata clause. Baysdon v. Nationwide Mutual Fire Ins. Co., 259 N. C. 181, 13 S.E.2d 311 (1963); Friedfeld v. Royal Indemnity Co., Fla.App., 167 So.2d 586 (1964); Air Transport Mfg. Co. v. Employers Liability Assur. Corp., 91 Cal.App.2d 129, 204 P.2d 647 (1949). However, the result in each of these decisions can be explained under the principle that the liability of an insurer may be reduced proportionately to the extent that an insured lias destroyed that insurer's has destroyed that insurer's right to contribution from another insurer by relieving the latter of liability through failure to give a requisite notice of claimsomewhat similar to the principle of Louisiana law that a creditor who remits the debt due by one solidary codebtor discharges the other codebtor pro tanto, cf., LSA-Civil Code Articles 2101, 2103, 2203. Harvey v. Travelers Ins. Co., La.App. 3 Cir., 163 So.2d 915.
[14] This treatise section contains an interesting discussion noting the distinction between the common-law concepts is largely irrelevant under modern statutory and jurisprudential law, since based chiefly on ancient analytical and procedural doctrines, now nearly extinct, relating to survivorship, discharge, and joinder of parties.
[15] For instance, an insolvent company does not provide "collectible" insurance within the meaning of the clause. 8 Appleman, Section 4911, text at footnote 2.
[16] We pretermit the further suggestion that such a nebulous claim of coverage against the "other" insurer as the present (see Facts above) should not be regarded as "valid and collectible", since it is obviously suggestive of litigation and not collectible, if at all, until after suit. See Clow v. National Indemnity Co., 54 Wash.2d 198, 339 P.2d 82 (1959).