CHASEZ, Judge.
Plaintiff, Robert A. Otillio, instituted this suit for damages arising out of an automobile accident against defendants, William C. Scopes and his insurer, The Insurance Company of North America. Defendants answered, denying liability and by way of reconvention sought recovery of damages suffered by the defendants, and also plead the doctrine of last clear chance.
After trial on the merits judgment was rendered against the plaintiff dismissing his action for the reason that he was con-tributorily negligent. Defendants’ recon-ventional demand was also denied. From this judgment plaintiff perfected this ap *320 peal. Defendants have neither appealed nor answered and accordingly the merits of defendants’ reconventional demand is not before this court.
The collision giving rise to this suit occurred at the intersection of Decatur and Conti Streets in the City of New Orleans, Louisiana. Decatur is a one-way street with the flow of traffic directed towards Canal Street. Conti is also a one-way street with traffic movement being toward the river.
Plaintiff alleges that he was driving his 1962 Volkswagen on Decatur Street towards Canal Street at about 9:00 A.M., December 27, 1969, at a speed estimated between twenty and twenty-five miles per hour. At a distance of about SO feet he observed the defendant “overshoot” the stop sign on Conti Street. He testified that at that point he applied his brakes and reduced his speed to approximately IS miles per hour. He saw the defendant stop, or appear to stop, some five feet to his right into the intersection and, assuming that the defendant was yielding to his vehicle, the plaintiff released his foot from the brake and began to accelerate again. At this point the defendant’s vehicle accelerated across the intersection. Plaintiff swerved to the right in an effort to avoid a collision and, in so doing, struck the left rear side panel of defendant’s vehicle behind the rear door, approximately near the position of the gas intake porthole.
Defendant testified that he was driving on Conti Street in a 1966 Ford Station Wagon proceeding to the French Market with his parents who were visiting with him at the time.
He asserts that he stopped for the stop sign on Conti Street but there was a truck parked on the right side of Decatur Street to his left and although he could see through the windows of the truck he moved his car forward approximately six feet into the intersection, at which time he observed the plaintiff’s vehicle approaching. Fearing that the plaintiff’s vehicle would strike his automobile, he accelerated across the intersection as fast as he could, with the resultant effect being the collision involved in this law suit.
Defendant’s negligence cannot seriously be questioned. He was on a less favored street controlled by a stop sign. He was under a duty not only to stop, but to also yield to traffic on the favored street and this was clearly not done. Placing himself in a position of assumed peril he compounded his negligence by attempting to beat the plaintiff through the intersection.
Defendant alleges that plaintiff was con-tributorily negligent, however, and cites Roussell v. Strug, 225 So.2d 34 (La.App., 4th Cir., 1969) as controlling. In that case we held:
“[4, 5] The applicable rule of law is that a motorist on a favored street has the right to assume that any driver approaching the intersection on a less favored street will yield the right of way; however this preference does not relieve the driver travelling on the favored street from the duty of exercising ordinary care of having his car under control and operating it at a reasonable and proper rate of speed while approaching an intersection and while crossing it. When the superior motorist should reasonably realize in time that the inferior traffic will continue its approach and will obstruct the superior motorist’s passage across the intersection, he is guilty of negligence should he fail to take every precaution to avoid a collision. Randall v. Baton Rouge Bus Company, 240 La. 527, 124 So.2d 535 (1960), and cases therein cited.”
However, the defendant’s vehicle in that case had traveled fifty feet or more in crossing the intersection and the front of his vehicle had cleared the intersection before being struck by the plaintiff’s vehicle. Additionally, the plaintiff had a reasonable time to react when it was seen that *321 the inferior traffic was disobeying the stop sign. In the present case, Otillio, in our opinion, did not have a reasonable time to react to the situation. The plaintiff saw defendant overshoot the stop sign, at which time he applied his brakes and slowed down. Upon seeing the defendant appear to stop, he then attempted to proceed through the intersection. He had a superior right to proceed by virtue of LSA-R.S. 32:123 and § 38-97 of the New Orleans City Code, 19S6. In addition, defendant violated LSA-R.S. 32:123(C) when he moved forward to obtain a het-ter view, saw the plaintiff’s vehicle approaching and then decided that he could move across the intersection in an attempt to beat the plaintiff through the crossing and force the plaintiff to stop or yield to his vehicle. In defendant’s maneuver, after stopping he moved from a position of relative safety (plaintiff stated affirmatively that he could have gone around the front of defendant’s automobile even though defendant had overshot the stop sign and was protruding into the intersection) to a place of imminent danger without due caution.
Last clear chance is inapplicable under the present case because plaintiff did not have sufficient time to react to the dangerous condition created by the defendant.
Plaintiff was not negligent and is entitled to recover damages suffered. To hold otherwise would, in our opinion, negate the use of stop signs for effective traffic control. Just because one party gains entrance into an intersection before another party does not necessarily mean that the second party is thereby automatically guilty of negligence, or contributory negligence. On the contrary, the party controlled by the stop sign must ascertain an appraisal of traffic and only proceed across when a hazard does not appear imminent. See Shephard v. Checker Cab Company, 230 So.2d 343 (La.App., 4th Cir., 1970); Bell v. Allstate Insurance Company, 260 So.2d 363 (La.App., 4th Cir., 1972).
Certain damages suffered by the plaintiff were stipulated to and they are: $162.00 for Dr. William Fisher as the treating physician; $30.00 for Dr. William S. Neal for x-rays, and $75.00 for taxicab fare.
We are convinced that plaintiff has also suffered a loss of wages. Plaintiff worked as a stevedore in a job described by him as a “waterboy”. We note from the nature of this job and the circumstances that he was employed by various companies at different times; any corroborating evidence showing loss of earnings would therefore be difficult if not impossible to obtain.
Plaintiff’s petition claims $790.00 for loss of income. The record indicates that he earned $5.28 per hour. However, this wage rate is based on overtime pay earned on Saturdays and is not a good indicia of his normal hourly wage rate. He stated that he lost five to six hours a night which was estimated to total some 40-50 hours of lost work. Because, however, he only testified to a wage based on an overtime rate we are of the opinion that using these figures we could not achieve with any reasonable degree of certainty the actual loss of his earnings.
Plaintiff did testify that he lost 11 or 12 days of work, which produced a loss of wages in the sum of $350.00. We find this figure more indicative of his actual wage and, accordingly, feel that recovery of this sum is allowable under the law.
Supportive of our position is the Supreme Court’s holding in Jordan v. Travelers Insurance Company, 257 La. 995, 245 So.2d 151, 154, 155 (1971) which states:
“[5] Other intermediate decisions likewise hold, correctly, that a claim for loss of earnings need not be proved with mathematical certainty, but only by such proof .as reasonably establishes the claim. This may even consist only of the plaintiff’s own reasonable testimony, if accepted as truthful; although of course *322 the better practice is to introduce corroborating testimony. See, e. g.: Charles v. Phoenix Insurance Co., 229 So.2d 467 (La.App.3d Cir. 1969); Hughes v. New Orleans Public Service, Inc., 221 So.2d 331 (La.App.4th Cir. 1969); Clouatre v. Toye Bros. Yellow Cab Co., 193 So.2d 344 (La.App.4th Cir. 1966); Colton v. Hartford Fire Ins. Co., 135 So.2d 489 (La.App.2d Cir. 1961).
“[6] Where there is a legal right to recovery but the damages cannot be exactly estimated, the courts have reasonable discretion to assess same based upon all the facts and circumstances of the case. Civil Code Art. 1934(3); Brantley v. Tremont & Gulf Ry. Co., 226 La. 176, 75 So.2d 236 (1954), and decisions therein cited. This latter principle is also applicable, where the fact of loss of earnings or earning power, past or future, is proved, but not any exact amount. Goode v. Hantz, 209 La. 821, 25 So.2d 604 (1946); Clouatre v. Toye Bros. Yellow Cab Co., 193 So.2d 344 (La.App.4th Cir. 1966), certiorari denied 250 La. 270, 195 So.2d 147 (1967); Hidalgo v. Dupuy, 122 So.2d 639 (La.App. 1st Cir. 1960), certiorari denied.”
The accident caused the plaintiff to hit his head on the sun visor. He broke the steering wheel with his chest and his knees hit the dashboard. He had “a little bleeding from the mouth” and his ankle, back, neck and lower spine were hurting. He was examined by Dr. Fisher on December 30, 1969 who stated in a stipulated report that in his opinion the plaintiff suffered multiple injuries consisting of “moderate contusion of the left forehead, severe sprain of the neck, multiple contusions located at the right and left knees, right arm, a moderate contusion-sprain of the medial aspect of the left ankle.” Results of x-rays taken were negative showing normal structure. Medical treatment consisted of the wearing of a cervical collar, heat applications and medications for pain and swelling. Plaintiff was seen daily until improvement was observed, at which time the doctor saw him at two or four day intervals. On February 14, 1970 he was discharged. Dr. Fisher’s prognosis was for anticipation of minor pain recurrence in the neck area that could probably be controlled by medications and therapy.
We therefore find that an award of $2,000.00 for plaintiff’s pain and suffering is adequate under the facts of this case considering the injury plaintiff suffered and the duration of treatment.
For the foregoing reasons that portion of the judgment appealed from is reversed and judgment is rendered herein in favor of Robert A. Otillio and against William C. Scopes and The Insurance Company of North America, jointly, severally, and in solido, for the sum of $2,617.00. All costs to be paid by defendant-appellees.
Reversed and rendered.