68 So.2d 752

GUIN

v.

COMMERCIAL CAS. INS. CO. et al.

GUIN v. CALVERT FIRE INS. CO. et al.

Nos. 41152, 41153.

Nov. 9, 1953.

J. Vance Thompson, Alexandria, for plaintiff-appellant.

Polk & Culpepper, Alexandria, for intervenor and appellee.

MOISE, Justice.

The plaintiff, A. D. Guin, prosecutes this action (No. 41,153) against the Calvert Fire Insurance Company for $3,850, alleging that $2,480 is the value of the truck coupled with the crossties destroyed by fire, that $750 is the value of the attorney's fees to be paid, and $620 is for penalties incurred because of an alleged failure of the company to settle timely the loss sustained. The Commercial Credit Corporation intervened and prayed for a judgment in the sum of $1,121.40, the amount of the balance due on its note, and $341.80 carrying charges.

On October 29, 1952, the plaintiff filed suit (No. 41,152) against the Commercial

Casualty Insurance Company of Newark, N. J., and Milwaukee Mechanics' Insurance Company, praying for $3,850, itemized in the same manner as in suit No. 41,153.

The Milwaukee Mechanics' Insurance Company pleaded fraud on the part of the assured, in that he had stated that he owed nothing on the truck, that it was not encumbered, and that the truck was new.

For the purpose of a decision, our court directed that the two cases be consolidated.

On an examination of the jurisprudence and the record evidence, we propounded the following syllogisms:

1. Has the insurance company the right to limit liability under the policy clause of the insurance contract?

2. Are the incorrect answers given to the representatives of Commercial Casualty Insurance Company and Milwaukee Mechanics' Insurance Company by plaintiff such as would void the policy?

3. Under the present jurisprudence and the pleadings and facts of record, is the assured entitled to collect penalties and reasonable attorney's fees from the insurance company?

4. Is the value of the truck as fixed by the judge at $1,500 proper?

The 1950 Studebaker truck was bought for $1,700, less $600 trade-in value, on November 28, 1950. The purchase was financed through the Commercial Credit

Corporation, which company, at the time of the sale, exacted a mortgage to protect itself against fire and theft, which mortgage was in an amount equal to the value of the truck.

The plaintiff, on his own initiative, took out another policy of insurance on his truck with Commercial Casualty Insurance Company and Milwaukee Mechanics' Insurance Company for the cash value of the truck.

A reading of the policy of the Calvert Fire Insurance Company reveals a condition specified in the policy contract stating:

"6. If the insured has other insurance against a loss covered by this policy the company shall not be liable under this policy for a greater proportion of such loss than the applicable limit of liability stated in the declarations bears to the total applicable limit of liability of all valid and collectible insurance against such loss."

In the second suit No. 41,152, the Commercial Casualty Insurance Company and the Milwaukee Mechanics' Insurance Company insured, on March 27, 1951, the identical truck for its cash value, subject to Condition No. 18 of the policy contract, which reads:

"18. If the insured has other insurance against loss covered by this policy the company shall not be liable under the policy for a greater proportion of such loss than the applicable limit of liability of all valid and collectible in-

surance against such loss; provided, however, * * *."

■ There being no statutory provision to control, the company has a right to limit liability as proposed by the policy contract.

In the case of Millaudon v. Western Marine & Fire Ins. Co., 9 La. 27, the Court held:

"It appears to be a settled principle, that if the subsequent policy contain no provision in respect to prior insurances, the amount of insurable interest for such policy will be the same as for the first, for the assured may insure again and again the same property, against the same risks, if he will pay the premium; but he can recover but one indemnity, and this he may recover of the first or subsequent underwriters, and those who pay the loss, may demand a proportionable contribution from the other insurers. The different underwriters are, by this means, sureties for each other."

In the case of Muse v. Metropolitan Life Ins. Co., 193 La. 605, 192 So. 72, 125 A.L.R. 1075, it was held that where there is no statutory provision, insurance companies may limit their liability. See, also, 14 R.C.L., Sec. 103, p. 930; 45 C.J.S., Insurance, § 922(c), p. 1031; Powell v. Liberty Industrial Life Ins. Co., 197 La. 894, 2 So. 2d 638.

It, therefore, does appear that the contention of the insurance company is backed

up by both precedent and authority, and we answer Syllogism No. 1 in the affirmative.

## Syllogism No. 2.

The assured gave incorrect information.

Under the facts shown and authorities submitted, is the policy here voided?

Milwaukee Mechanics' Insurance Company pleaded fraud and denied any right for recovery, and it also averred that the taking out of additional insurance increased its hazard. This contention is a mere *brutum fulmen,* because, as shown here, the additional insurance minimizes the loss sustained, because of a limited liability which can be invoked in each policy contract to one-half of the amount of the loss sustained. The statement of this fact should be conclusive on the subject. But, the defendant insurance company contends further that the representations made by the insured vitiated the policy contract.

The case of Lee v. Traveler's Fire Ins. Co., 219 La. 587, 53 So.2d 692, was a well-considered opinion, and the dicta of that case, and the authorities cited, should be conclusive of this question. So says the Lee case, quoting Knowles v. Dixie Fire Insurance Co. of Greensboro, 177 La. 941, 149 So. 528:

"Under Act No. 222 of 1928, p. 291, the question whether the existence of the chattel mortgage on the property subject to the insurance at the time of the loss increases the moral hazard·

is one of fact which must be determined by the circumstances surrounding each case.

"In order that an insurer may avoid liability under a fire policy on the ground that the moral hazard was increased by a breach of the warranty contained in the chattel mortgage clause, it carries the burden of showing that the changed conditions brought about by the imposition of the mortgage were of such real and substantial character as might influence the insured in his conduct and attitude toward the property. The term 'moral hazard' as used in the act and in the decisions relates to the pecuniary interest which the insured or some other person has either in protecting the property from loss by fire or destroying it. The moral hazard is least when the pecuniary interest of the insured in protecting it is greatest. It is greatest when his pecuniary interest is such that he might gain most by burning it. * * *" [219 La. 587, 53 So.2d 694.] See, also, 12 L.L.R. 129.

Plaintiff did not gain anything by the fire. In fact, he sustained a severe loss, because his truck was the instrumentality by which he made a living for himself and his family. The mortgage due the finance company will take all of the proceeds of the insurance. Like a two-edged sword, the plaintiff has lost his truck as well as the means of making a living.

To put him in the same position to earn his living as before the fire means the cost and expense of another truck.

### Syllogism No. 3.

Under the jurisprudence as now exists and the pleadings of record, is the assured entitled to collect reasonable attorney's fees?

The Calvert Fire Insurance Company argues that an insurer is not liable for penalties or attorney's fees unless its failure to pay the claim of an insured within sixty days after receipt of proof of loss is found to be arbitrary, capricious, or without probable cause. LSA-R.S. 22:658, amended by Act 417 of 1952, reads:

"All insurers issuing any type of contract other than those specified in R.S. 22:656 and 22:657 shall pay the amount of any claim due any insured including any employee under Chapter 10 of Title 23 of the Revised Statutes of 1950 within sixty days after receipt of satisfactory proofs of loss from the insured, employee or any party in interest. Failure to make such payment within sixty days after receipt of such proofs and demand therefor when such failure is found to be arbitrary, capricious, or without probable cause, shall subject the insurer to a penalty, in addition to the amount of the loss, of 12% damages on the total amount of the loss, payable to the insured, or to any of said employees, together with

all reasonable attorney's fees for the prosecution and collection of such loss, or in the event a partial payment or tender has been made 12% of the difference between the amount paid or tendered and the amount found to be due and all reasonable attorney's fees for the prosecution and collection of such amount. Provided, that all losses on policies covering automobiles, trucks, motor propelled vehicles and other property against fire and theft, the amount of the penalty in each of the above cases shall be 25% and all reasonable attorney's fees. As amended Acts 1952, No. 417, § 1."

Of course, the law in every case must be applied to the facts. The facts show that the truck was destroyed by fire on April 25, 1951; that suit was filed by plaintiff against Calvert Fire Insurance Company on October 27, 1951, and that Calvert Fire Insurance Company filed an answer on November 14, 1951, nearly seven months after the total destruction of the truck by fire.

Article XIII of defendant's answer pleaded as a special defense "that is it not liable to pay to the petitioner any amount whatsoever under the terms of the policy in question, for the reason that petitioner and/or his agent and employee, Felix Johnson, did wilfully, fraudulently and intentionally destroy the said truck by setting fire to the same for the intent and purpose of collecting insurance under the terms of his policy with defendant, and the policies which he carried with the (defendant) Commercial Casualty Insurance Company, and the Milwaukee Mechanics' Insurance Company of Wisconsin, covering the same loss.

▇▇ The Company here charged a crime. It did not offer a scintilla of evidence to establish the crime charged. This course of conduct was arbitrary and capricious and without probable cause when viewed in the light of the incidents connected with the truck's catching afire. Defendant demanded that suit be dismissed at cost, nearly seven months after the truck was destroyed by fire.

In the Commercial Casualty Insurance Company suit, liability was denied altogether. The suit was filed against them on October 10, 1951, and they answered sometime in November, but their position was always to the effect that there could be no liability or recovery because of the alleged nullity and invalidity of the policy due to fraud which subjected the policy to cancellation and return to the issuing company.

▇▇ By reason of the misrepresentations, the company had probable cause to contest recovery. The representations made were not warranties and in no way increased the hazard of loss. Therefore, the company should be held liable, not for the whole amount, but under the limited liability clause of its policy, exclusive of penalties and attorney's fees. We do not feel that

a company should be penalized if there is probable cause to contest. The right to go to court is a constitutional grant.

### Syllogism No. 4.

Was the value fixed by the trial judge of the truck at $1,500 proper?

We have reviewed the testimony of the witnesses and we think that the valuation placed by the district judge was correct.

■ In addition, the trial judge saw and heard the witnesses and he must not be reversed on his findings unless his conclusions are manifestly erroneous. Nalty v. Nalty, 222 La. 911, 64 So.2d 216; Ensminger v. New Orleans Public Service, Inc., La.App., 65 So.2d 402, Eals v. Swan, 221 La. 329, 59 So.2d 409, Martin v. Martin, 212 La. 1092, 34 So.2d 329. The company did not sustain the burden of proof, to show that the valuation of the truck was too high.

A separate decree will have to be entered in each of these consolidated cases, the one which follows to serve in Case No. 41,153 of the docket of this Court, A. D. Guin v. Calvert Fire Insurance Company, Commercial Credit Corporation, Intervenor.

For the reasons assigned, it is ordered, adjudged and decreed that the judgment for $750 in favor of the plaintiff and against the Calvert Insurance Company be affirmed. It is further ordered that the Commercial Credit Corporation receive credit on the payment of its mortgage lien for this amount. It is further ordered that the refusal to allow attorney's fees and penalties be reversed and set aside, and that the defendant, the Calvert Insurance Company, pay plaintiff $187.50, being 25% of the amount of $750, and attorney's fees in the sum of $250. Costs to be paid by the defendant. Thus affirmed and reversed in part.

HAWTHORNE, J., dissents in part and assigns written reasons.

McCALEB, J., concurs in the decree and assigns reasons.

LE BLANC, J., dissents with respect to the imposition of penalty and attorneys fees.

McCALEB, Justice (concurring).

I agree that the insurers are liable and also that the penalties and attorney fees are properly assessed against Calvert Fire Insurance Company. At the time the company offered to "process" the claim under Condition 6 of the policy, it was no doubt aware that plaintiff could not afford to settle with it for fifty percent of the loss in view of the fact that Commercial Casualty Insurance Company had denied any liability on its policy. It strikes me that, had Calvert's stand been a sincere one, it would have continued to assert its prior offer when sued in this case. Instead, it took the groundless position that it was not liable at all alleging that plaintiff had set fire to

his truck with the intent and purpose of collecting the insurance.

In view of all of the circumstances of the case, I find it difficult to believe that the original offer of adjustment on a pro-rata basis was founded in good faith.

HAWTHORNE, Justice (dissenting in part).

I am not in accord with the holding of the majority that the defendant, Calvert Fire Insurance Company, is subject to the penalty and attorney's fees imposed by LSA-R.S. 22:658.

The truck in the instant case was destroyed by fire on April 25, 1951. Proof of loss was received by, and demand made on, the defendant, Calvert Fire Insurance Company, on July 9, 1951. At the time of loss the truck was insured also by a policy issued by Commercial Casualty Insurance Company and Milwaukee Mechanics' Insurance Company, and it was agreed by stipulation that at the time of the loss of the truck this other insurance policy was in full force and effect. On July 27, 1951, approximately 18 days after receipt of proof of loss, defendant in the instant case offered to settle with plaintiff under the clause of its policy which related to "Other Insurance" and which provided for a proration of the amount of loss in the event

there was other insurance. Plaintiff, however, refused to consider a settlement on such a basis and persisted in his demand for payment by the defendant of the full amount of the loss. Moreover, on August 21, defendant informed the plaintiff by letter that it was ready, willing, and able to adjust a settlement of the loss under the provision of the "Other Insurance" clause. No such settlement was made, and the present suit followed.

The majority opinion in the instant case has ordered the defendant to do exactly what it offered to do and what the plaintiff refused to permit it to do—that is, to pay its pro rata share of the loss under the "Other Insurance" provision of the policy —, and notwithstanding this fact has assessed penalties and attorney's fees against the defendant. The defendant was prevented from prorating the loss by the refusal of the insured, the plaintiff, to accept the amount due under such proration. The court now says that the position which the defendant assumed was correct, yet it orders the defendant to pay the penalties and attorney's fees as provided in the statute. Under these facts and circumstances I do not see how defendant's refusal or failure to pay the full amount claimed can be deemed "arbitrary, capricious, or without probable cause".