SAVOY, Judge.
This is a suit for recovery under certain fire insurance policies issued by the defendants to plaintiff as named insured. The policies covered the buildings and contents of the establishment known as the Embassy Bar and Lounge in Lafayette, which sustained extensive damages by fire on September 29, 1960. After trial on the merits, the district court rendered judgment for defendants, rejecting plaintiff’s demands and dismissing her suit. The plaintiff has filed an appeal to this Court.
On February 28, 1956, Earl Eugene Roberts leased from the owner the property on which the Embassy Bar and Lounge was constructed. The term of the lease was for ten years, with an option to renew for five years. The lease provided that all buildings erected on the leased premises would, on termination of the lease, become the property of the lessor without any obligation *907 of reimbursement. It provided that Roberts was to place on the property a building having a value of approximately $5,000.00, and that Roberts was to maintain and keep the improvements on the premises in good state of repair, was to carry at least $5,000.-00 insurance, and in the event that the improvements on the premises were damaged or destroyed by fire or other cause, the proceeds of the policy would be used in reconstructing the permanent improvements.
Roberts constructed a building on the property referred to as a “dance hall” at a cost of $7,000.00, and another building referred to as the “cement building” at a cost of $7,062.42. He also acquired furniture and fixtures costing $9,906.34. Roberts operated the Embassy Bar and Lounge from 1956 to 1959. On August 31, 1959, Roberts entered into a credit sale with plaintiff, Helen Allen, in which he sold plaintiff, for a consideration of $36,800.00, all of his interest in the lease, in the buildings and improvements situated on the leased premises subject to the right of the lessor to the ownership of all buildings at the termination of the lease or any renewal thereof, and certain described equipment. The credit sale was secured by mortgage and vendor’s privilege. The agreement provided the vendee was to keep the buildings and improvements on the property constantly insured against risks of loss by fire, wind, storm or tornado up to the full insurable value thereof, and:
“to transfer the policies of insurance to the said holder or holders of the said note in the event of a default with regard to said insurance to cause said insurance to be effective at the cost of said vendee at the then current rates, not to exceed 5%, and the reimbursement of all sums paid for that purpose shall be secured by the privilege and mortgage aforesaid, this clause is not to be taken as making it obligatory upon the holder or holders of said notes to cause said insurance to be effective upon the holder or holders of said notes for failure so to do.”
Certain policies with Roberts named as loss payee were cancelled by plaintiff, who on August 6, 1960, obtained the policies involved in this lawsuit which name her as loss payee. These policies provide $15,000.00 coverage on the buildings and $8,000.00 on contents.
Plaintiff paid Roberts a total of approximately $15,800.00 toward the purchase price, but because of a default by plaintiff in the credit sale agreement, an executory proceedings was taken by Roberts against plaintiff, and the lease, equipment and improvements as listed in the credit sale were seized on August 17, 1960. The record of that executory proceedings was introduced as an exhibit in this case. Plaintiff obtained a restraining order preventing the sale, but after a hearing on September 28, 1960, the district court rescinded the restraining order and rejected the application for an injunction to suspend the sale, and a judgment was signed on September 29, 1960, ordering the foreclosure proceedings to continue as initially filed, and the original order of seizure and sale and notice of seizure and sale issued on August 17, 1960, was reinstated.
During the above mentioned proceedings for the restraining order, Roberts determined that he had no insurance protecting him inasmuch as plaintiff had cancelled the previous insurance which named him as loss payee. Roberts contacted an agent and obtained various insurance policies and binders which were issued on September 28, 1960, by an agent who testified that he was under the impression that Roberts was the owner of the property. The coverage under those policies issued to Roberts resulted in the lawsuit which came before this Court in Roberts v. Houston Fire & Casualty Company, 168 So.2d 457 (La.App. 3 Cir. 1964). The record of that case, hereinafter referred to as the Roberts case, supra, was introduced as evidence in this case by stipulation.
On the morning of September 29, 1960, the insured property suffered extensive *908 fire, smoke and water damage. Plaintiff testified she closed the place of business at about 2:00 A.M., at which time she began moving articles from the building, such as whiskey and glasses, since as far as she was concerned, she had lost the building and had no more interest therein. The origin of the fire was not determined.
In the foreclosure proceedings, the record shows that only one order and writ of seizure and sale was issued by the judge and clerk, respectively, on the date of August 17, 1960. This was the same order and writ which was reinstated by the court on September 28, 1960, after the hearing on the rule for injunction. The only notice of seizure appearing in the record is dated August 17, 1960, and was served personally on Helen Allen on the same date. These instruments and the advertisements in the newspaper describe the property as set forth in the original credit sale between Roberts and plaintiff. The mortgage certificate also contains the same description. For the first time in the record, on the appraisal secured by the Sheriff on December 28, 1960, there also appears handwritten in ink by persons unknown, following the description of the property to be appraised, this additional language, to-wit: “All rights incidental thereto, including all insurance proceeds.” The description of the property was typewritten, as opposed to this addition in handwriting. From this point forward, all further descriptions of the property, including the proces verbal and the Sheriff’s sale, also include a reference to “all rights incidental thereto, including all insurance proceeds”. At the Sheriff’s sale on December 28, 1960, the “property” was sold to the plaintiff in that suit, Roberts, for the price of $18,000.00, at %rds of the appraisal of $27,000.00.
On October 18, 1960, in the same proceedings, Roberts filed suit via ordinary against Helen Allen for a deficiency judgment in the sum of $12,827.78, being the balance claimed due on the credit sale after allowance for the credit from the Sheriff’s sale. The record does not indicate service was made on Helen Allen in that suit, the Sheriff’s return indicating that the Sheriff was unable to locate her in the parish. The record does not indicate that any further action has been taken or any further pleadings have been filed in that matter since 1961.
In finding for the defendants in the instant case, the district court gave the following written reasons:
“The court is of the opinion that the said Helen Allen had no insurable interest at the time of the fire on September the 29th, 1960, as the property which was the subject matter of the fire insurance policy was under seizure by a court order by reason of her default under her contract with Earl Eugene Roberts. As previously stated any rights which Helen Allen might have had under the insurance policies were sold at Sheriff’s sale on December, 1960. The court is of the opinion that the judgment of court of September the 28th, 1960, maintaining Roberts’ seizure under the act of sale between Roberts and Helen Allen had the effect of depriving the said Helen Allen of an insurable interest in and to the property which was subsequently destroyed by fire on the 29th day of September, 1960.”
Plaintiff maintains that the district court erred in holding that she had no insurable interest in the insured property at the time of the fire and in holding that the rights to the proceeds of the insurance policies involved in this case were sold to Earl Eugene Roberts by the Sheriff’s sale in December, 1960. Defendants maintain that plaintiff had no insurable interest in the property inasmuch as the property had been seized and any insurable interest which she may or might have had in the property was completely eliminated and reduced to the point where it had no value. It is further maintained that when plaintiff instituted suit she had no interest whatever in the property, and she had no cause of action for the recovery of the insurance proceeds *909 since these proceeds had been sold to Roberts by the Sheriff’s sale on December 28, 1960.
The first issue is whether or not plaintiff had an insurable interest in the insured property at the time of the fire. This Court finds that plaintiff had an insurable interest in the property on the date of the fire, notwithstanding her indebtedness to Roberts or the foreclosure proceedings. She was still the owner of the property seized and had a lawful and substantial economic interest in the safety or preservation of the subject of the insurance, free from loss, destruction, or pecuniary damage. LSA-R.S. 22:614. She had the right to prevent the sale in the execu-tory proceedings by payment of Roberts’ claim any time prior to the time of the Sheriff’s sale. LSA-C.C.P. Art. 2340. It was also to her interest that the property be preserved so that it would bring a good price at the Sheriff’s sale, by appraisement, as she was legally responsible for any deficiency should the net proceeds from the sale fail to satisfy her obligation to Roberts. LSA-C.C.P. Art. 2771 and Art. 2772. See the discussion of the law found in Couch on Insurance 2d, Section 24:68, et seq. A mortgagor’s insurable interest covers the full value of the mortgaged premises, even though the mortgage debt is equivalent to the full value of the property since in the event of loss he or she would be deprived of the insured property and still be obligated to pay the mortgage debt. This insurable interest continues beyond the default, and the beginning of a foreclosure proceeding to the time of the foreclosure sale, and in some instances not applicable to the instant case, even beyond the date of the foreclosure sale. Since in the instant case the Sheriff’s sale was not until December 28, 1960, the plaintiff held an insurable interest in the insured property on the date of the fire, September 29, 1960. Under the Louisiana valued policy law as applicable on September 29, 1960, once the insured is found to have an insurable interest in an immovable, then the insurer may not question the extent of the insured’s interest therein. The Forge, Inc. v. Peerless Casualty Company, 131 So.2d 838 (La.App. 2 Cir. 1961); and Roberts v. Houston Fire and Casualty Company, supra.
The next issue for consideration is whether or" not plaintiff had a cause of action for the proceeds of the insurance policies in view of the Sheriff’s sale on December 28, 1960. This Court finds that the district court erred in holding that the rights of plaintiff in the insurance policies were sold at the Sheriff’s sale.
The first reference to “All rights incidental thereto, including all insurance proceeds”, came in the appraisal of the property to be sold. This description was added in a manner(suggestive of irregularity and was vague aftd uncertain. The order of seizure and the writ of seizure did not describe any other “rights”, policies of insurance or the proceeds therefrom. The notice of the seizure served on Helen Allen did not describe any other “rights”, the policies of insurance or the proceeds, and the Sheriff did not effect any seizure of the insurance policies involved in the instant case or the proceeds, as required by LSA-C.C.P. Art. 2721. The advertisements required by LSA-C.C.P. Art. 2722 and LSA-R.S. 43 :- 201, et seq., did- not include incidental “rights” or “insurance proceeds”. The Sheriff as an executive officer was without authority and power to sell the “insurance proceeds” or any other property of the debtor not described in the order of seizure and writ of seizure. LSA-C.C.P. Art. 321.
Defendants maintain the defects alleged have been cured by the prescription in LSA-C.C. Art. 3543. However, with respect to the attempted sale of the insurance proceeds, the Sheriff’s sale on December 28, 1960, was an absolute nullity on the face of the records and not cured by the prescription in LSA-C.C. Art. 3543.
It is well settled that a Sheriff’s sale made under execution without a previous *910 seizure of the property is a nullity. See Turner v. Glass, 197 La. 721, 2 So.2d 191 (1941), and cases therein cited. The record shows that the Sheriff did not seize the “insurance proceeds” prior to the time of the foreclosure sale. Also, LSA-C.C. Art. 3543 requires that the sale be “authorized by an order of the courts of this State”, and the Sheriff was not so authorized by an order to sell the “insurance proceeds”. Without a court order authorizing the sale, and without a previous seizure, no adjudication or sale of property can be made, and the attempted foreclosure sale of the “insurance proceeds” was void.
Defendants also maintain that plaintiff was guilty of fraud and false swearing and was guilty of actions which increased the moral hazards in violation of the terms of the policies which rendered the policies null and void and precludes her from any recovery herein. None of the actions complained of constitute fraud on the part of plaintiff. The inconsistencies between the proof of loss and the subsequent law suit cannot be considered as false swearing, but are in the nature of amendments. Although there are inconsistencies in plaintiff’s testimony at the trial as compared with an earlier deposition, these were not of a serious nature, and were not such as to constitute willful concealment or misrepresentation of material facts so as to void the policy. Nor do we find that the hazard was increased within the control or knowledge of the insured so as to void the contract of insurance. Defendants point out that the plaintiff had financial difficulties, a fifteen-day suspension of her liquor license, she paid a fine of $35.00 for allowing a minor on the premises, and she received adverse publicity in the newpapers concerning the conduct on the premises. It is noted as to this last item that the insurance agent knew of the newspaper publicity. Inasmuch as defendants insured the premises knowing the nature of the business operation, a nightclub operation, this Court does not find that these actions of plaintiff increased the insurance hazard so as to void the policy.
Defendants maintain that the institution of a foreclosure proceedings against the property increases both the physical and moral hazards, and cite the case of Jones & Pickett v. Michigan Fire and Marine Ins. Co., 132 La. 847, 61 So. 846 (1913). However, the policy provision in that case was different in that it specifically provided that the policy shall be void in case of loss after foreclosure proceedings were commenced with the knowledge of the insured. In the instant case, the policies involved are the later type standard fire policies wherein the earlier provision as to “commencement of foreclosure proceedings” has been deleted. These policies provide that the loss is not covered while the “hazard” is increased “by any means within the control or knowledge of the insured”. See comment at 21 T.L.R. 92, which discusses this “hazard” clause and states that the Louisiana cases have pertained solely to the increase of the “physical” hazard, using the narrow interpretation of the word “hazard”.
Damages will now be considered. In the Roberts case, supra, this Court upheld the district court’s finding as to the damages to the improvements of $13,-000.00, and amended the award for damages to the contents from $10,193.73 to $5,-595.65. The evidence in the instant case relative to improvements is the same as in the Roberts case, supra; and accordingly, this Court fixes the damages to the improvements at $13,000.00. Turning to the damages to the contents, we find that plaintiff failed to show the extent of damages or to show the cost of repairing the camera, the two window air conditioning units, and the portable television, and no recovery will be granted for these items. The evidence shows that plaintiff proved damages to the 96 Dynasty chairs and 30 table bases, the Brody front bar, the Brody back bar, 10 Brody chairs, 10 bar stools, the National Cash Register, and the No. 100 *911 LaCross Icemaker, in the amount of $4,-168.-30. These are the amounts as claimed in plaintiff’s brief for these items. Although, as pointed out by counsel for defendants, plaintiff’s proof of loss as attached to the petition shows a lower claim for certain specific items than above allowed, the pleadings were enlarged by the introduction of evidence as to value.
The next issue for consideration is the interpretation of the following provision found in each of the policies issued by defendants herein, to-wit:
“This Company shall not be liable for a greater proportion of any loss than the amount hereby insured shall bear to the whole insurance covering the property against the peril involved, whether collectible or not.”
Defendants maintain that in order to pro rate the liability of the defendant insurers herein, the insurance policies issued to Earl Eugene Roberts should be also considered in determining the “whole insurance”. In this respect, it is contended that since Roberts held policies on the improvements totalling $13,000.00 which were reformed by this Court to total $16,000.00 coverage in the Roberts case, supra, and the policies in the instant case total $15,-000.00 coverage on the same improvements, the whole insurance on improvements amounts to $31,000.00; and accordingly, each defendant insurer in the instant case is liable for only its proportion of the loss that the amount of each policy bears to the whole insurance coverage of $31,000.00. A similar argument is advanced as to the insurance on the contents. Defendants cite the cases of Guin v. Commercial Casualty Ins. Co., 224 La. 44, 68 So.2d 752 (1953) ; and Milan v. Providence Washington Ins. Co., 227 F.Supp. 251 (D.C.La., 1964).
In the instant case, at the time of the loss the same improvements were insured against the same peril by policies issued in favor of Roberts totalling $16,000.00, and by policies issued in favor of plaintiff totalling $15,000.00, totalling $31,000.00. As to contents, Roberts’ policies totalled $13,000.00, and plaintiff’s policies totalled $8,000.00, altogether totalling $21,000.00. In effecting coverage, both Roberts and Allen had each requested and obtained coverage for an amount which was considered full value of the improvements and contents. Roberts collected on his policies for the full amount of the loss in accordance with the reported Roberts case, supra, wherein the “pro rata liability” clause was not discussed. In the instant case, defendants have proved the existence of the other insurance on the improvements and contents, and the payment thereunder to Roberts inures to the benefit of plaintiff by reducing the claim of Roberts against her. The fire insurance policies issued herein are contracts of indemnity to compensate for loss and not for the purpose of allowing profit. Plaintiff was under an obligation in this case to carry insurance with a loss payable clause in favor of Roberts, and the policies thereafter effected by Roberts can therefore be said to be with the consent of Allen so as to constitute other insurance. Accordingly, under the facts of this case, we believe this additional insurance taken out by Roberts should diminish plaintiff’s recovery under the “pro rata liability” clause. See Appleman, Insurance Law and Practice, Vol. 6, Section 3909.
This Court does not believe that the circumstances here warrant an allowance for penalties and attorney’s fees under LSA-R.S. 22:658, and they are accordingly denied.
For the reasons assigned, the judgment of the district court is reversed and set aside, and judgment is hereby rendered in favor of plaintiff for damages to the improvements insured by the defendants, and against Houston Fire and Casualty Insurance Company for %ist of $13,000.00, or in the amount of $1,258.05; Norwich Union Fire Insurance Society, Ltd. for %ist of $13,000.00, or in the amount of $2,096.75; Security Insurance Company for %ist of $13,000.00, or in the amount of $1,258.05; *912 and Robert Lewis Angel for %ist of $13,-000.00, or in the amount of $1,677.40; the said amounts to bear legal interest from date of judicial demand until paid.
It is further ordered, adjudged and decreed that there be judgment in favor of plaintiff for damages to the contents insured by the defendants, and against Houston Fire and Casualty Insurance Company for %ist of $4,468.30, or in the amount of $638.34; Norwich Union Fire Insurance Society, Ltd. for iiist of $4,468.30, or in the amount of $851.12; and Security Insurance Company for %ist of $4,468.30, or in the amount of $212.78; the said amounts to bear legal interest from date of judicial demand until paid.
All costs in the district court and on appeal are assessed to defendants.
Reversed and rendered.