CIACCIO, Judge.
Loyola University appeals from a district court judgment decreeing L. Mulry Tetlow to be a tenured professor at the university. We find that the trial judge’s conclusions are clearly wrong and that Dr. Tetlow had not acquired the status of tenure. Consequently, we reverse the judgment of the district court.
Dr. Tetlow’s pertinent academic employment began with two years on the full-time faculty of St. Thomas University in Canada. In the summer and fall semesters of 1978 Dr. Tetlow was employed on a part-time basis by Loyola. In January 1979 Dr. Tetlow contracted with Loyola to be employed on a full-time basis with a designated rank of “visiting associate professor.”
The employment contract made reference to certain sections of the Faculty Handbook as supplying the stated conditions of employment. The contract also designated Dr. Tetlow’s rank as “visiting associate professor,” although his status at that time did not satisfy the definition of “visiting professor” provided by the handbook.
Beginning with the academic year of 1979-1980, which commenced with the fall semester of 1979, and continuing through the academic years of 1980-1981 and 1981-1982, Dr. Tetlow was employed on a full-time basis with the designated rank of “associate professor.” Loyola and Dr. Tetlow entered into a new contract for each of the mentioned academic years. All of these contracts are the same except for the dates and the salary designation. Each of the contracts refers to the same sections of the Faculty Handbook as stating the conditions of employment.
The academic year 1982-1983 was Dr. Tetlow’s last year at Loyola. The record does not contain a copy of the contract for that year. The record does contain, however, a copy of a letter dated May 17, 1982, to Dr. Tetlow from the Vice President for Academic Affairs, Dr. Robert Preston, which informs Dr. Tetlow that “your contract for the 1982-83 academic year will be your final contract.”
During the 1981-1982 academic year Dr. Tetlow applied for tenure. The Rank and Tenure Committee recommended that Dr. Tetlow be awarded tenure. The administration, however, rejected this recommendation: Dr. Preston recommended against tenure and Fr. James C. Carter, S.J., the President of the University, concurred in Dr. Preston’s recommendation.
Dr. Tetlow felt that he was being treated unfairly, and after studying the Faculty Handbook, he concluded that he should have been automatically tenured. He expressed these thoughts and conclusions to Dr. Preston and Fr. Carter, but they did not agree. Dr. Tetlow brought this suit against the university seeking to be recognized as tenured and to be accorded, therefore, the appropriate process afforded tenured faculty in the event of dismissal.
The trial judge awarded judgment in favor of Dr. Tetlow,
decreeing and judicially finding that the plaintiff is a tenured professor at Loyola University, by virtue of his 4 years in residence as an Associate Professor, and further, ordering the defendant to conduct any and all employment termination proceedings it may convene regarding the plaintiff in strict accordance with those provisions contained in the defendant’s Faculty Handbook regarding termination of a tenured faculty member.
The issue before us is to determine whether the trial judge was clearly wrong in concluding that Dr. Tetlow had become automatically tenured.
The Faculty Handbook provides that, “Non-tenured Associate Professors or Professors may be granted tenure after they have been in residence for two years. After they have been in residence for four years, they are automatically tenured.” Thus, if Dr. Tetlow spent four years in residence as an Associate Professor (while at Loyola he never held the rank of Professor), he would be automatically tenured.
*1244 His two years at St. Thomas do not count toward the four years in residence at Loyola. (They count when considering another method for acquiring tenure, but that method is inapplicable here.) The summer and fall semester of 1978 do not count because Dr. Tetlow was employed on a part-time basis. Part-time faculty do not accrue time toward acquiring tenure. (Faculty Handbook Section II, Paragraph 3.)
The academic years 1979-1980, 1980-1981, 1981-1982 total three years time in residence as an Associate Professor. Thus, there must be at least one more year in residence as an Associate Professor accruing time toward tenure before Dr. Tetlow can be considered “automatically tenured.”
The first time period germane to the dispute is the spring semester commencing in January of 1979. Dr. Tetlow’s contract for this semester indicates that it covers the time period “Jan. 11,1979 through May 18, 1979.” Dr. Tetlow’s rank is designated on the contract as “Visiting Associate Professor.” The contract is signed by Dr. Preston and Dr. Tetlow.
Dr. Tetlow argues that he did not satisfy the Faculty Handbook definition of visiting associate professor, and that, therefore, he should be considered as having been an associate professor during the term of this contract. The evidence supports the conclusion that Dr. Tetlow did not satisfy the definition of visiting associate professor. Loyola argues that, nevertheless, the contract designates Dr. Tetlow as a visiting associate professor, and that for the term of that contract he should be considered as such.
Whether Dr. Tetlow’s rank carries the modifier “visiting” is an important consideration regarding tenure. The Faculty Handbook provides specifically that, “Time as a Visiting Professor does not accrue to tenure.” If Dr. Tetlow was “visiting” as indicated by the contract, then the time covered by the term of that contract does not count toward the four years for becoming automatically tenured.
Agreements legally entered into have the effect of laws on those who have formed them. La.C.C. Art. 1901 [Now La. C.C. Art. 1983]. Courts are bound to give legal effect to agreements according to the true intent of the contracting parties. That intent is determined by the words of the contract when they are clear and explicit and lead to no absurd consequences. La. C.C. Art. 1945 [Now La.C.C. Arts. 2045 and 2046]. Some effect is to be given to every word or clause if possible for a court may not impute to the parties the use of language without meaning or effect. Lambert v. Maryland Casualty Company, 418 So.2d 553 (La.1982). One who signs a contract is presumed to know its terms and cannot avoid its provisions, absent fraud or error, simply because he fails to read or understand it. Allen v. Royal “16”, Inc., 449 So.2d 1365. (La.App. 4th Cir.1984). The parties are bound by their agreement regardless of any seemingly harsh consequences, provided the agreement is not contra bonos mores or in violation of some prohibitory law. Smith v. Moncrief, 421 So,2d 1127 (La.App. 3d Cir.1982), writ denied 426 So.2d 177 (La.1983).
There are no allegations of fraud or error. The contract is not contra bonos mores or in violation of any prohibitory law.
By the clear and explicit words of the contract the parties agreed that Dr. Tetlow’s rank would be “Visiting Associate Professor.” The Faculty Handbook, incorporated into the contract by reference, provides a definition of a visiting professor and declares that time as a visiting professor does not accrue to tenure. The fact that Dr. Tetlow may not have (and did not) fit the definition of a visiting professor does not operate to prevent the parties from agreeing that his rank under the terms of that contract would be “Visiting Associate Professor.”
The words of the contract are clear and explicit and do not lead to any absurd consequences. If Dr. Tetlow did not read the contract including the referenced Faculty Handbook provisions, or did not understand *1245 the terms as used, he should not have signed the contract. Having signed the contract, he is presumed to know its terms and cannot avoid its provisions.
By the terms of the contract Dr. Tetlow was a visiting associate professor. His time as such, also by the terms of the contract, did not accrue toward tenure.
Dr. Tetlow argues further that Loyola reformed the contract by virtue of a “Revised Personnel Notification” wherein he was accorded “full time status ... with spring contract dated 1-11-79.” Dr. Tet-low apparently does not understand that it is his designation as “visiting” which precludes time accrual toward tenure. A person may be employed full-time as a visiting professor.
Dr. Tetlow also contends that it does not make sense for the parties to have agreed that his two years at St. Thomas University “are to be counted in establishing your eligibility for tenure” (under a seven-year plan not pertinent to this case) unless the term of the 1979 spring semester contract also counted toward tenure. We do not find this to be necessarily so, particularly in light of Dr. Preston’s testimony that he issued this initial full-time contract to Dr. Tetlow as a “visiting associate professor” to indicate that his employment would be on an experimental basis in order to determine whether a full-time teacher in Dr. Tetlow’s field would increase enrollment. In any event, as stated above, the parties may agree to whatever they choose as long as their agreement is not contra bonos mores or in violation of a prohibitory law.
In an effort to address all of Dr. Tetlow’s contentions, we note that his argument that the 1979 spring semester should be counted as a full year toward tenure is without effect in light of our ruling that time under the terms of that contract as a visiting associate professor does not count toward tenure.
The only time period remaining of Dr. Tetlow’s employment at Loyola is the academic year 1982-1983. Although the record does not contain a copy of the contract for this year it is clear that this contract was Dr. Tetlow’s fourth consecutive academic year employed as a full-time associate professor. As noted previously, Dr. Tetlow was informed by letter dated May 17, 1982, from Dr. Preston that “you will not be awarded tenure and your contract for the 1982-1983 academic year will be your final contract.”
Loyola clearly intended that Dr. Tetlow’s appointment as an associate professor was to expire at the end of the 1982-1983 academic year. At the time Dr. Tetlow was offered this terminal contract he had not been granted tenure and had not automatically acquired tenure, having completed only three years in residence as an associate professor. Under the terms of the Faculty Handbook the only obligation Loyola had with respect to its intention to have the appointment expire at the end of the 1982-1983 academic year was to give notice in writing “at least twelve months before the expiration of the faculty member’s appointment.” Loyola satisfied this obligation with Dr. Preston’s letter.
Dr. Tetlow had previously been informed by Dr. Preston, by letter dated January 14, 1982, that his application for tenure was being denied, but that he would be offered a contract for the 1982-1983 academic year.
The terms of the Faculty Handbook providing that after four years in residence associate professors are automatically tenured clearly indicate that the faculty member becomes tenured with the offer and acceptance of a contract for a fifth year of full-time permanent employment, i.e. after the fourth year. If the faculty member’s appointment is allowed to expire at the end of the fourth year, he has not acquired tenure. In essence the “four years” is a probationary period following which the employment is either terminated, continued as tenured, or continued on other terms agreed to by the parties. In this case employment was terminated. Dr. Tetlow, therefore, did not acquire tenured status. Compare Grantham v. Rockhurst Univer *1246 sity, 563 S.W.2d 147 (Mo.App., K.C.Dist.1978).
Having not acquired tenured status, Dr. Tetlow was not entitled to the procedural rights afforded by the Faculty Handbook to tenured faculty. As noted previously, Loyola’s only obligation regarding the end of employment under the circumstances presented here was to give written notice at least twelve months prior to the expiration of the appointment. Loyola satisfied this obligation.
The trial judge’s conclusion that Dr. Tet-low had acquired tenured status (even before the notice provided him in 1982) is clearly wrong. We, therefore, reverse the judgment of the district court. Since all of plaintiff’s claims depend upon concluding that he was tenured, these claims need not be addressed. Accordingly, we render judgment in favor of defendant, Loyola University, and dismiss plaintiff’s suit at his cost. All costs in this court shall be paid by plaintiff.
REVERSED.