486 So.2d 932 (1986)
LAMBERT REDI-MIX, INC.
v.
CHARLES CARTER AND COMPANY, INC., and the Aetna Casualty and Surety Company.
No. CA 84 1553.
Court of Appeal of Louisiana, First Circuit.
March 25, 1986.
*933 Stephen P. Dart, Kilbourne & Dart, St. Francisville, for plaintiff-appellee.
John W. Perry, Jr., Owen, Richardson, Taylor, Mathews & Atkinson, Baton Rouge, for defendant-appellant in No. 1.
James D. Thomas, II, Wall, Thomas, Riche & Wall, Baton Rouge, for defendant-appellant in No. 2.
Before CARTER, SAVOIE and ALFORD, JJ.
ALFORD, Judge.
This is an appeal by all parties from a judgment awarding the plaintiff, Lambert Redi-Mix, Inc. (Lambert), $40,996.17, plus legal interest, on its contract to supply concrete to the defendant, Charles Carter and Company, Inc. (Carter).[1] Said judgment was also rendered against Carter's surety, Aetna Casualty and Surety Company, Inc. (Aetna), as a co-defendant. The court rejected Lambert's additional claim for the cost of ice added to the concrete and for attorney's fees, as well as Carter's and Aetna's reconventional demand against Lambert for $50,000.[2]
Carter, as contractor for portions of a power plant being built for Louisiana Electric Cooperative, Inc. (LECI), contracted with Lambert, a concrete supplier, for pre-mixed concrete to be delivered to Carter at the job site. The contract between Lambert and Carter was in the form of a purchase order, issued February 5, 1970, and signed by representatives of both parties. The purchase order provided that Lambert was to supply concrete for $16.70 per cubic yard, as follows:
Division 3 Concrete
Ready Mixed Concrete 4000 PSI 6.0 bags
Admixture at cost
Air entraining agentno charge
The purchase order further stipulated that "All terms and conditions as required by the general conditions of the project specifications are a part of the requirements as provided by this purchase order. This is without exception."
The requirements for Division 3 concrete were set out in Division 3A of the project specifications. Division 3A-4.a stated that a laboratory selected by the owner (LECI) would design the mix for the concrete supplier. Division 3A.14 provided that the concrete was to be mixed by Lambert in accordance with the laboratory's mix design. Division 3A.16 set out the general requirements for actually mixing the concrete.
In accordance with the specifications, Lambert was furnished with two different mix designs formulated by Pittsburg Testing Laboratories (Pittsburg), the lab hired *934 by LECI.[3] Both of the mix formulas were designed to meet the 4,000 psi requirements.[4]
Lambert began providing Carter with concrete in accordance with the mix designs supplied to them on or about June 1, 1970, and continued to supply concrete until the project was completed several months later. During this period, on three occasions the concrete in pours made by Carter from material delivered by Lambert failed to meet the specified 4,000 psi requirement after twenty-eight days. The failures occurred on June 10, June 30 and July 3, 1970. Carter was required by the project engineer to remove and replace the defective concrete. Upon receiving Lambert's invoices for delivered concrete, Carter unilaterally deducted its costs to remove and replace the concrete, as well as taking advantage of the discount for prompt payment as provided on the purchase order.[5]
Lambert sued Carter, its surety, Aetna, and LECI to recover the full amount of its concrete invoices, including ice used in the concrete, and legal interest, plus attorney's fees in accordance with a clause printed on the concrete delivery tickets. LECI was released from the suit prior to trial. The trial court granted Lambert's claim for the amount due for the delivered concrete and legal interest, but denied their claim for ice used in the concrete. The court also denied Lambert's request for attorney's fees and dismissed Carter's and Aetna's reconventional demand. Carter and Aetna appeal, alleging that the trial court erred in finding that Lambert had not breached its contract by delivering concrete that did not reach 4,000 psi and in finding that Carter was not entitled to the prompt payment discount. Lambert, in its answer, appeals specifying as error the trial court's findings that Lambert was not due reimbursement for the ice or 20% attorney's fees. After a thorough review of the record, we agree with the trial court's findings and affirm.
The burden of proof in the instant case is governed by LSA-C.C. art. 2232 as it appeared prior to the 1985 revision of the "Obligations" portion of the Civil Code.
He who claims the execution of an obligation must prove it.
On the other hand, he who contends that he is exonerated, must prove the payment or the fact which has produced the extinction of the obligation.
Thus, a litigant who pleads extinction of an obligation bears the burden of proving such defense by a preponderance of the evidence. Bell v. Badger Dredging, Inc., 420 So.2d 1197 (La.App. 5th Cir.1982).
The record reveals that Lambert batched the concrete for Carter, using the mix designs formulated by Pittsburg to meet the 4,000 psi requirement. Once the concrete was conveyed to the job site by Lambert, it came under the total control and supervision of Carter's employees. Carter claims that it is not obligated to pay Lambert for certain concrete delivered on three specific days because of the defective nature of the concrete. Therefore, Carter must prove, that it is more likely than not, that the concrete was defective at the time it was delivered to the job site.
The trial court noted that Carter argues "that the low strength of the concrete is attributable to the addition of ice in the mixing process." The record reveals that one of the engineers directed that ice be added to the concrete mix in order to lower the internal temperature of the mixture. If the mix is too hot when placed, the hydration process could be too rapid and could adversely affect the concrete's strength. In order to slow the hydration process, Division 3A.20.b of the concrete specifications states that "Concrete shall *935 not have an in-place temperature higher than 80 F degrees." Darryl Patin, the resident civil engineer for the project, stated that "we would not allow concrete in the forms unless it met the eighty degree specification."
Carter does not contest the appropriateness of adding the ice. Rather, they argue that Lambert's method of adding the ice resulted in the low strength concrete. At the time all three faulty pours were mixed, Lambert was adding the ice after all the other materials were added. Testimony by witnesses indicated that adding the ice last could result in uneven mixing, lumpiness and unmelted ice, which could affect the concrete's strength. However, testimony also showed that one of the engineers always supervised the pouring of the concrete, and that any of the adverse conditions mentioned above would have been readily discernable at the time the concrete was discharged from the truck. Moreover, it was mid-August, more than a month after the last faulty pour, before Lambert changed their method of adding the ice to the mixture.
Carter also contends that Lambert's failure to weigh the ice prior to adding it to the mixture could have resulted in the mix having too much or too little water. Several witnesses testified that if the ratio of water to cement is altered, the strength of the concrete could be adversely affected. The record shows that Lambert substituted ice for water on a pound-for-pound basis. As the ice was needed, pre-measured 300 pound blocks of ice were crushed and added to the mixture. Lambert did not have a scale for weighing the ice prior to adding it to the mix. Wilson J. Bourgeois, a supervisor with Pittsburg, testified that in mid-August he noted Lambert's lack of weighing facilities and recommended that the 300 pound blocks of ice "should be checked closely to see if proper blocks are being used." No recommendation was made to actually weigh the ice.
The trial court noted that Lambert raised several equally plausible causes for the low strength concrete, all of which would have occurred after the concrete mix came under the custody and control of Carter. Therefore, the court concluded that Lambert's method of adding and weighing the ice was not shown to be the cause of the low strength concrete. The trial court found that Lambert had proven that it provided concrete in accordance with its contract and that Carter had not proved exoneration from payment because of a defect in the mix at the time of delivery. See Concrete Control Division v. Cement Products Service, 457 So.2d 769 (La.App. 1st Cir.1984). Thus, the judge determined that Lambert was entitled to the full purchase price of the concrete. We find no manifest error in the trial court's findings. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).
Because we uphold the trial court's determination that Lambert is entitled to the full purchase price of the concrete, Carter's contention that the court erred in refusing to allow Carter the prompt payment discount is without merit. As the trial court stated, "since the defendant failed to pay this price when due, defendant cannot deduct the discount available to it for prompt payment."
On the other hand, Lambert contends that Carter should also pay for the ice used in the concrete mixture. The trial court found that Lambert had agreed to provide the materials required by Division 3 of the concrete specifications. The ice was added in accordance with Division 3A.20.b of the specifications. We agree with the trial court's statement,
As the agreement required that plaintiff provide the necessary materials and as the ice became a necessary material in the hot weather, plaintiff agreed to provide the ice for the price agreed upon. Plaintiff cannot, therefore, recover an additional amount from the defendant for the ice.
Lambert also argues that the court should have awarded 20% attorney's fees in accordance with a clause printed on the delivery receipts that were signed by Carter's *936 employees at the job site. Contractual provision for attorney's fees must be specifically agreed to by the parties. 457 So.2d at 771. The jurisprudence is clear that an employee's signature on a delivery ticket is merely an acknowledgment of receipt of the goods, where there is no showing that the purchaser knew or should have known about the attorney's fees clause on the receipts. 457 So.2d at 771. In the instant case, there was no evidence that the parties ever discussed an attorney's fees clause. Therefore, the trial court's refusal to award attorney's fees is correct.
For the foregoing reasons, we affirm the judgment of the trial court in all respects. Costs of this appeal are to be borne by Carter and Aetna.
AFFIRMED.
NOTES
[1] The full sum of $40,996.17 is subject to a credit of $26,479.75 which had been paid by Carter prior to trial, leaving the principal amount due at $15,978.89. We note that the trial court's judgment incorrectly referred to a credit of $26,429.75. Prior to trial, it was agreed between the parties that Lambert's acceptance of Carter's checks for a reduced amount would not affect transaction or compromise under Louisiana law, LSA-C.C. arts. 3071 et seq.
[2] Defendants did not appeal the denial of their reconventional demand.
[3] Although the purchase order called for 6.0 bags of cement per cubic yard of concrete, the approved mix design for caps and beams provided for 5.75 bags per cubic yard.
[4] Division 3A.2 provided that the concrete strength would be 4,000 psi. This means that the concrete would withstand at least 4,000 pounds per square inch of pressure twenty-eight days after placement.
[5] Under "F.O.B. Terms", the purchase order stated "Discount $1.00 cu yd 10th month proximo."