FORET, Judge.
H & H Concrete, Inc. (H & H) filed suit against Civicon, Inc. (Civicon) and Consola-ta Cemetery for recovery of money owed in connection with a contract to supply concrete and other material. Civicon filed a reconventional demand for damages, alleging that H & H had breached the contract in question. The trial court rendered judgment in favor of H & H and against Civicon in the sum of $15,707.61, together with interest and attorney fees[1] and dismissed all claims asserted by Civicon in its recon-ventional demand. Civicon has appealed.
FACTS
Civicon was retained by a general contractor known as The Chelsea Group to do concrete work at the Consolata Cemetery located in the Lake Charles area. By agreement dated January 7, 1986, H & H agreed to supply to Civicon concrete and backfill grout to be used in connection with this project. Delivery of concrete pursuant to this agreement continued without incident until the early part of April of 1986, at which time Howard Delahoussaye, who was then an employee of H & H, advised John White, President of Civicon, that H & H would be closing its operations at the end of the month due to its inability to obtain sufficient liability insurance coverage on its trucks. The last delivery of concrete took place on April 17, 1986 and, on April 30, 1986, H & H shut down its operations entirely.
In May of 1986, Soil Testing Engineers, Inc., who was retained to conduct strength tests on all concrete used on the subject job, conducted 28-day strength compression tests on the concrete poured on April 8, 1986, and it was discovered that a total of 113 cubic yards of concrete poured on this date did not meet the required strength of 3500 psi (pounds per square inch) provided for in the job specifications, as well as in the agreement entered into between Civicon and H & H. Accordingly, *1296 Doug McGee, the project engineer retained by Consolata, reduced the amount due the general contractor by 15% or $1,445.85, and the general contractor, in turn, imposed a similar reduction on Civicon. Considering this, Civicon, who at the time owed H & H a total of $17,153.46 for concrete delivered, offered to pay to H & H the full amount due, less the sum of $1,445.85, being the amount of the reduction imposed on Civi-con by the general contractor. H & H refused this offer of settlement, and this litigation ensued.
ISSUES
The following issues are presented for our consideration on appeal:
1. Should Civicon’s liability be limited to the discounted price of $40 per cubic yard provided for in the subject contract?
2. Should Civicon be liable for attorney’s fees provided for in the contract?
3. Did H & H breach the contract in question by failing to supply any additional concrete after the April 17, 1986 delivery?
4. Did the concrete in question contain redhibitory defects and, if so, is H & H the maker of the concrete sold, thus entitling Civicon to damages and attorney’s fees in accordance with C.C. art. 2545?
5. Did the trial court err in recognizing and maintaining the materialman’s lien filed by H & H?
1. SHOULD CIVICON’S LIABILITY BE LIMITED TO THE DISCOUNTED PRICE OF $40.00 PER CUBIC YARD PROVIDED FOR IN THE SUBJECT CONTRACT?
The contract in question provides that Civicon shall pay for concrete having a strength of 3500 psi at the rate of $43 per cubic yard, subject to a discount of $3 per cubic yard if payment is made “on or before the tenth day of the month following the month in which purchase is made.” (General terms and conditions of sale — Section 2) As noted in our recitation of the facts, Civicon offered to pay to H & H the full amount due, less the amount of the price reduction imposed by the general contractor. Civicon maintains that this offer was made while the discounted price was still available and thus Civicon should only be held liable for the discounted price of $40 per cubic yard. We disagree. It is well established that in order to be accorded the legal effect of payment, a tender must be absolute and unconditional. Riv-erland Oil Mill v. Underwriters for Lloyd’s, 368 So.2d 156 (La.App. 2 Cir.1979), writ denied, 369 So.2d 1365 (La.1979). Thus, an offer to pay a stated sum in full settlement is not considered an unconditional tender. O’Brian v. Allstate Ins. Co., 420 So.2d 1222 (La.App. 3 Cir.1982). See also, Walker v. Investment Properties, Ltd., 507 So.2d 850 (La.App. 5 Cir.1987), writ denied, 513 So.2d 293 (La.1987). In the instant case, John White of Civicon clearly did not make an unconditional tender. His letter of June 11, 1986, as well as the testimony of the witnesses at trial, reveals that White offered to pay the undisputed sum of $15,707.61 in full settlement of this dispute, whereas the total amount claimed by H & H was $17,153.46. As such, this offer is not considered an unconditional tender. Consequently, Civi-con is liable for the nondiscounted price of $43 per cubic yard for 3500 psi concrete as no payment or unconditional tender has been made on this account.
2. SHOULD CIVICON BE LIABLE FOR ATTORNEY’S FEES PROVIDED FOR IN THE CONTRACT?
Civicon maintains that it should not be held liable for attorney’s fees provided for in Section 5 of the contract (in the event the account is placed into the hands of an attorney for collection) in view of the fact that it did offer to pay the undisputed amount before it was necessary for H & H to retain counsel in this matter. However, we have already determined that the offer tendered by Civicon did not constitute an unconditional tender and therefore, this argument is without merit. Civicon also contends that it was not made aware of the fact that the contract in question provided for attorney’s fees and consequently, it should not be held liable for attorney’s fees *1297 on this basis. Civicon cites Lambert Redi-Mioc v. Charles Carter & Co., 486 So.2d 932 (La.App. 1 Cir.1986), and Concrete Control Div. v. Cement Products Ser., 457 So.2d 769 (La.App. 1 Cir.1984), in support of its argument. These cases are clearly distinguishable from the instant case as they simply state the well established principle that a delivery receipt cannot support a claim for attorney’s fees absent a showing that its provisions (providing for attorney’s fees) were agreed to by the parties. In this case, the claim for attorney’s fees is founded upon a bilateral, written agreement signed by representatives of both H & H and Civicon. Section 5 of the contract clearly provides for attorney’s fees in the event that the account is placed in the hands of an attorney for collection. The fact that Civicon may not have been aware of provisions of the contract providing for attorney’s fees does not, in and of itself, render such provisions unenforceable. One who signs a contract is presumed to know its terms and cannot avoid its provisions, absent fraud or error, simply because he fails to read or understand it. Allen v. Royale 16, Inc., 449 So.2d 1365 (La.App. 4 Cir.1984). There is no showing of fraud or error; therefore, attorney’s fees are recoverable in accordance with the contract in question.
3. DID H & H BREACH THE CONTRACT IN QUESTION BY FAILING TO SUPPLY ANY ADDITIONAL CONCRETE AFTER THE APRIL 17, 1986 DELIVERY?
As previously noted herein, H & H advised John White of Civicon, in the early part of April, 1986, that H & H would be terminating all deliveries effective April 30, 1986. In fact, the record reflects that the last delivery of concrete pursuant to the subject contract occurred on April 17, 1986. H & H contends that it was unable to purchase sufficient insurance on its trucks and therefore it was necessary to shut down its operations. H & H contends that Section 8 of the contract relieves H & H from any further obligation thereunder. Section 8 is as follows:
“The Seller will not, however, be responsible for failure to make delivery when prevented by strikes or other labor troubles, accidents or necessary repairs to machinery, by fire, floods or other adverse weather conditions, by inability to procure transportation, electric power, or operating materials or machinery, by Government regulations, requirements or orders, by acts of public enemies, mobs or rioters, by acts of God, or by any other causes beyond the Seller’s control. The Seller reserves the right to refuse to make deliveries when it believes unsafe or impracticable by reason of any existing or threatened strikes, lockout, picketing or other labor dispute.”
Civicon maintains that the inability to procure insurance was not just cause for nonperformance as H & H was not thereby prevented from performing under the contract. We agree. Even assuming that H & H was unable to purchase liability insurance on its trucks, we do not feel that this is a circumstance that would “prevent” H & H from performing under the contract. Other alternatives were available to H & H. For example, it could have leased other trucks or retained someone else to transport the concrete in question. The mere fact that performance was rendered more costly to H & H by virtue of the fact that it was unable to use its own trucks does not justify its refusal to perform. Tetlow v. Loyola University of New Orleans, 483 So.2d 1242 (La.App. 4 Cir.1986), writ denied, 488 So.2d 689 (La.1986). Accordingly, we find that H & H was not prevented from performing under the contract and thus, H & H breached the contract in question by terminating its deliveries after April 17,1986. H & H argues that Civicon agreed to relieve H & H from any further liability in connection with the contract as *1298 evidenced by its letter to H & H dated April 21, 1986.[2]
We do not find this argument convincing. When H & H advised Civicon that it was closing down, Civicon had no choice but to go along with H & H’s decision in this regard. John White of Civicon testified that the purpose of his letter of April 21, 1986 was simply to confirm the fact that H & H would be terminating its deliveries. Clearly, this letter, submitted under the aforementioned circumstances, does not constitute a mutual recission of the contract in question. Time was undoubtedly of the essence in this matter and Civicon had no choice but to accede to H & H’s decision and proceed immediately to find another supplier in order to fulfill its (Civi-con’s) contractual obligations. We therefore find H & H’s argument in this regard to be without merit.
*1299 Having found that H & H breached the contract in question, we now turn to the issue of damages. John White testified that he made several calls to concrete suppliers, and the best price he could find for 3500 psi concrete was $41.50 per cubic yard submitted by Dunham-Price. The record reflects that it took an additional 1130.5 cubic yards of 3500 psi concrete to complete the job at an additional cost to Civicon (over and above the price of $40 per cubic yard[3] provided for in the contract) of $1,695.75. We therefore find that Civicon is entitled to damages totalling the sum of $1,695.75 for H & H’s breach of the contract in question.
4. DID THE CONCRETE IN QUESTION CONTAIN REDHIBITORY DEFECTS AND, IF SO, IS H & H THE MAKER OF THE CONCRETE SOLD, THUS ENTITLING CIVI-CON TO DAMAGES AND ATTORNEY’S FEES IN ACCORDANCE WITH CIVIL CODE ARTICLE 2545?
Article 2520 of the Louisiana Civil Code states as follows:
“Art. 2520. Redhibition is the avoidance of a sale on account of some vice or defect in the thing sold, which renders it either absolutely useless, or its use so inconvenient and imperfect, that it must be supposed that the buyer would not have purchased it, had he known of the vice.”
Thus, in all sales, there is an implied warranty that the object sold is fit for its intended use. Williams v. Ring Around Products, Inc., 344 So.2d 1125 (La.App. 3 Cir.1977). In the instant case, there is no evidence that the concrete in question, in spite of the fact that it did not meet the strength specifications stated in the contract, is not fit for its intended use. In fact, the evidence is to the contrary. Testimony adduced at trial established that the concrete has been left in place and has not caused any problems. Also, a subsequent testing of the concrete (performed after the 28-day strength compression test conducted by Soil Testing Engineers, Inc.) revealed that the concrete had obtained a strength at or near that of adjacent concrete poured by H & H which had met the required strength of 3500 psi when tested at 28 days. Accordingly, we reject Civicon’s contention that the concrete in question contained redhibitory defects and thus, even assuming that H & H was considered to be the “maker” of the concrete mix, Civicon is not entitled to damages and attorney’s fees as provided by Civil Code Article 2545.
5. DID THE TRIAL COURT ERR IN RECOGNIZING AND MAINTAINING THE MATERIALMAN’S LIEN FILED BY H & H?
In view of the fact that the owner is no longer a party to these proceedings, a judgment recognizing the materialman’s lien filed by H & H is improper. The judgment of the trial court shall therefore be amended accordingly.
CONCLUSION
Considering the above and foregoing, the judgment of the trial court is recast as follows:
IT IS ORDERED, ADJUDGED AND DECREED that there be judgment herein in favor of H & H Concrete, Inc. and against Civicon, Inc. in the principal sum of $15,707.61, plus legal interest from September 29, 1986, and attorney’s fees of 25% of the total amount of principal and interest.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that there be judgment herein in favor of Civicon, Inc. and against H & H Concrete, Inc. in the sum of $1,695.75, plus legal interest from the date of judicial demand until paid.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the claim for recognition of the materialman’s lien filed by H & H Concrete, Inc., recorded in Mortgage Book 1315, page 470, file # 1901485, is hereby denied.
*1300 IT IS FURTHER ORDERED, ADJUDGED AND DECREED that all costs of these proceedings be assessed equally to both parties, and that the expert witness fee of David E. Lourie be fixed at $75.00.
Costs of this appeal are to be divided equally between H & H Concrete, Inc. and Civicon, Inc.
AFFIRMED IN PART, REVERSED IN PART, AND RENDERED.

. Prior to trial, Consolata Cemetery was dismissed from the lawsuit by agreement of the parties.

. CIVICON, INC Route 12, Box 558 Lake Charles, LA 70605
(3181 436-2688 JOHN H. WHITE, JR President
April 21, 1986
H & H Concrete, Inc. P.O. Box 357 Westlake, LA 70669 ■
Re: Purchase Order #8601-277754 Consolata Cemetery
Gentlemen:
This correspondence will serve as notice of cancellation of the referenced purchase order, nue ho the insurance situation with your company it will be to our best advantage to contract with another supplier for the 35QQ PSI concrete needed.
[[Image here]]

. The contract in question states that Civicon shall only pay $40 per cubic yard provided payment is made on or before the 10th day of the month following the month in which the purchase of concrete is made. Because Civicon had the contractual right to pay this lower price, we must use this figure in computing damages in this case.